### JOHN COVERDILL ET AL. v. S. K. SEYMOUR.

No. 904. Decided May 21, 1900.

**1. Written Contract—Parol Evidence to Vary.**

The rule admitting parol evidence ·of a consideration different from or additional to that stated in a writing has no application where the considerations for the acts or agreements of one party are the undertakings of the other, and both are stated in the writing. It can not be shown that vendees were to pay more for the property than stated in the contract, nor that the vendor was to deliver more for the price stated. (P. 8.)

**2. Same—Sale—Contract Construed.**

A contract for sale of a lumber yard and stock of lumber, sash, etc., thereon for a named price in cash and secured notes, provided that certain sash, doors, and lumber ordered shipped to him by the vendor "shall be embraced in and form a part of the stock described as being situated on the lots conveyed hereby, and to become the property of the vendee on payment of said note." In the absence of allegation of fraud or mistake, it was not competent to show that the vendee was to pay the purchase price of the stock so ordered, on its arrival, in addition to the consideration named in the contract; for such payments he was entitled to credit on his notes. (Pp. 5-9.)

**3. Damages—Receiver.**

If a defendant can recover damages from a plaintiff for wrongfully procuring the appointment of a receiver, such damages could not include loss resulting from the acts of the receiver after his appointment, nor loss of credit, nor speculative profits. (P. 9.)

#### ON MOTION FOR REHEARING.

**4. Practice on Appeal—Reversal—Rehearing.**

Where on reversal a cause is remanded merely to permit appellee to develop a phase of his case rendered unnecessary by the ruling in the lower court now pronounced erroneous, he may waive this privilege on motion for rehearing and permit final judgment to be rendered. (Pp. 9, 10.)·

ERROR to the Court of Civil Appeals for the First District, in an appeal from Colorado County.

Seymour sued Coverdill and Buffington and had judgment which, on their appeal, was affirmed. Appellants then procured writ of error.

The portion of the opinion of the Court of Civil Appeals, by GILL, Associate Justice, relating to the costs of the receivership was as follows: "The exceptions of plaintiff were sustained to so much of defendant's

third original amended answer as sought damages for the wrongful appointment of a receiver, and this action of the trial court is complained of in the sixth assignment of error. This, if error, could be harmful only in case the receiver was shown to be wrongfully appointed. While the court sustained this exception (which may have been properly done on grounds which we do not think it necessary to discuss) the fact remains that the question of the existence of the facts and conditions which authorize his appointment was submitted to the jury among the many special issues submitted, and the jury found the facts to exist which amply justified the appointment. The court recited in his judgment that the order vacating the receivership was improvidently made, without full knowledge of the facts. That being the case, the costs of the receivership were properly chargeable to the funds in his hands and the net proceeds were correctly credited on the judgment. Even if the pleadings in which damages were sought had been otherwise correct, no damages could have been recovered where the receiver was rightly appointed. Cattle Co. v. Bindle, 32 S. W. Rep., 582. The record shows that the first receiver was discharged upon motion of appellants because of insufficient bond, and a permanent receiver was immediately appointed in his stead."

*Bullitt & Lewis*, for plaintiffs in error.—The court erred in holding that a different consideration was to be paid for the three car loads of material than that expressed in the bill of sale and deed from appellee to appellants, because the consideration for the three car loads of material being expressed in the deed and bill of sale, in the absence of allegations of fraud, accident, or mistake, or ambiguity, evidence of a different consideration than that expressed in the written contract between the parties was not admissible, because, where men have put into writing any portion of their transaction or agreement, they can not alter by parol evidence that which they have written, and when the writing purports to be the whole agreement between the parties it can neither be added to nor varied by parol evidence. Life Ins. Co. v. Chowning, 28 S. W. Rep., 117; Weaver v. Gainesville, 1 Texas Civ. App., 286; Faires v. Cockerill, 29 S. W. Rep., 669; Rubrecht v. Powers, 21 S. W. Rep., 318; Bupp v. O'Conner, 21 S. W. Rep., 619; Adams v. Hicks, 41 Texas, 239.

The court erred in holding that the only effect of the written contract was to create a lien upon the three car loads of material, and that it did not by its terms convey to appellants from appellee the three car loads of material for the consideration of $5200, subject to appellee's lien to secure said amount, because, by the language contained in the covenants of said contract, which are plain and explicit, the three car loads were conveyed to appellants by appellee.

The court erred in holding that, because the lower court found that the order and judgment discharging receiver Tinkler and vacating the order appointing him was improvidently made without a full hearing, appellants were not entitled to recover damages for the wrongful ap-

pointment of the receiver; because the order vacating said receivership was in full force and effect at the time said case was tried, had not been appealed from or set aside in any way, and it made no difference what the court submitted to the jury or what they found, for the order vacating said receivership could not then be assailed, but conclusively showed that the receiver was wrongfully appointed.

We can see no distinction in the taking of property from the possession of a person, between an equitable and a legal remedy, as far as the results are concerned or as far as the cost of the suit is involved; where property is unlawfully taken by legal process under the decision of our courts the party causing the taking must pay the costs thus incurred.    Arnold v. Willis, 4 S. W. Rep., 485; Railway v. Oliver, 37 S. W. Rep., 642; Brown v. Thomson, 31 S. W. Rep., 1087.

And where a receiver is wrongfully appointed at the instance of plaintiff, and is removed, while the receiver is entitled to his compensation out of the fund and the cost should be paid out of the fund, yet the defendant is entitled to recover from plaintiff not only the compensation paid to the receiver from his property, but also the cost so paid.   Beach on Receivers, 806, sec. 751; Smith on Receivers, 587, and authorities cited.

The situation at the time of trial was as follows:   The receivers had been removed; the judgments removing them were in full force; plaintiffs in error filed a plea in reconvention for the wrongful appointment of the receivers; the court below practically sustained a general exception to this plea; and yet the court below in its judgment says it was not advised as to the true conditions at the time it removed the receivers at a previous term of court, and adjudges all the cost of the receivership including the compensation to the receiver against plaintiffs in error.

In the plea in reconvention plaintiffs in error alleged that one object of defendant in error, in applying for and having a receiver appointed, was for the purpose of consuming the property in the cost of receivership, and prayed that this cost be charged to defendant in error; the general exception went to this and was sustained to it, and yet the court said it was mistaken when it discharged the receivers, and adjudged the costs against plaintiffs in error.   Whenever a person, in a legal or equitable proceeding, instituted for the purpose of injuring another and not for the purpose of securing a legal or an equitable right, wrongfully deprives one of the possession of his property, he who causes the injury with intent to injure is liable for all damages sustained. "During the same reign a statute was passed by Parliament for the purpose of regulating the business of the court and restraining its action, which enacted that when persons were compelled to appear before the council or chancery on suggestion found to be untrue, the chancellor should have power to award damages against the complainant in his discretion." 1 Pomeroy's Eq., 37, 38.

This being true, and our equity system emanating from the practice in England and the equitable rights as there administered, when the

court found that receivers had been wrongfully appointed, then, under our blended system, plaintiffs in error could reconvene for damages.

It is very true that plaintiffs had the right to appeal from the order appointing the last receiver, because this one was appointed upon a hearing, but the first receiver was appointed temporarily, without a hearing, and from this they had no opportunity to appeal; but what possible effect could the right of appeal have upon the rights of plaintiffs in error, they having elected not to appeal but to later urge an application to remove the receiver, which they did with success? The plaintiff surely has the right to select the remedy which he will pursue. The remedy by receivership and injunction are very closely connected, each equitable remedies, and for the purpose of some control not ordinarily granted at law. It has always been the practice where an injunction was dissolved which had been wrongfully issued to give such damages as may have been suffered, and regardless of whether the injunction was issued upon a hearing or not. It is said in Saunders v. Kempner, 32 Southwestern Reporter, 585, that the appointment of a receiver in a regular proceeding does not afford a basis for an action for damages unless the party complaining appeals; therefore, if this is the law an action for damages does not lie at all; for if the matter is reversed it is none the less a regular proceedings in court, and if the reason given is sound, damages could not be recovered at all in any case, while in the case of Cattle Co. v. Bindle, 32 Southwestern Reporter, 582, it is held in effect that the party injured by the wrongful·appointment of a receiver can recover damage by separate suit or plea in reconvention.

*Geo. McCormick* and *W. L. Adkins*, for defendant in error.—Oral evidence was admissible to show the true consideration to be paid for the three cars of material, because it evidenced a new and distinct agreement upon a new consideration and in addition to the written contract. 1 Greenl. on Ev., sec. 303; Heatherly v. Record, 12 Texas, 49; Cox v. Bray, 28 Texas, 247; Hogan v. Crawford, 31 Texas, 634; Preston v. Breedlove, 36 Texas, 96; Fox v. Tyler, 53 S. W. Rep., 462; Pishkos v. Wortek, 4 Wills. C. C., sec. 302.

The existence of a separate oral agreement constituting a condition precedent to the attaching to said three cars of any obligation under said written contract of conveyance, could properly be shown. Fox v. Tyler, 53 S. W. Rep., 462.

Where a written instrument forms part of a more comprehensive transaction, the terms of which are not intended nor attempted to be expressed in writing, parol testimony as to such parts of the transaction as were not reduced to writing is admissible. And especially is this true when the instrument shows from its face that it does not evidence the entire transaction. Thomas v. Hammond, 47 Texas, 43; Railway v. Jones, 82 Texas, 156; Hansen v. Yturria, 48 S. W. Rep., 795; Rubrecht v. Powers, 21 S. W. Rep., 318.

It is an elementary proposition that it may be shown by parol that

the consideration in a conveyance is not properly stated, and it will make no difference in this case that it be held that the three cars were a part of the property sold by the written contract, which states the consideration to be $500 cash and note for $4750, if in fact the consideration for the lots and lumber and the three cars was more than that, and this notwithstanding it be held that the contract states that all the property above stated was sold for the sum mentioned. Taylor v. Merrill, 64 Texas, 494; Northington v. Tuohy, 2 Wills. C. C., sec. 326; Womack v. Wamble, 27 S. W. Rep., 154; McLean v. Ellis, 79 Texas, 398; Herring v. Mason, 17 Texas Civ. App., 576; Strauss v. Gross, 2 Texas Civ. App., 433.

WILLIAMS, ASSOCIATE JUSTICE.—The defendant in error, Seymour, sold to plaintiffs in error, Coverdill & Buffington, the property described in the following instrument of writing, upon the terms therein specified:

"Know all men by these presents, that I, S. K. Seymour, of the above State and county, for and in consideration of the sum of five hundred dollars, in cash in hand paid to me by J. Coverdill and John B. Buffington, and the further sum of $4750 to be paid to me by them on or before ninety days after date, in evidence of which they have executed to me their joint and several promissory note of even date herewith for said sum, bearing eight per cent interest from said date, and stipulating for ten per cent attorney's fees, and payable at Columbus, Colorado County, Texas, have granted, sold, and conveyed, and by these presents do grant, sell, and convey unto the said Coverdill and the said Buffington, of said above State and county, the following described real and personal property, situated in said county, to wit: 1st. Lots one, two, three, and four in block three, of the town of Rock Island, according to the plan of said town. 2d. All my stock of lumber, sash, doors, and blinds, and all other articles and fixtures, belonging to the lumber business now carried on by me in my lumber yard located on the lots above mentioned and in the buildings thereon, except my stock of hardware and paints, the same being retained by me and conveyed hereby. To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Coverdill and the said Buffington, their heirs and assigns forever. And I do hereby bind myself, my heirs and executors and administrators, to warrant and defend all and singular the said premises unto the said Coverdill and the said Buffington, their heirs and assigns, against every person whomsoever lawfully claiming the same or any part thereof. But it is expressly agreed and stipulated as follows: 1st. That the vendor's lien is retained against the real estate hereby conveyed, consisting of the above described lots and appurtenances, to secure the payment of said note according to its tenor and effect. 2d. The title to the lumber, sash, doors, and blinds and other articles or fixtures belonging to said lumber business, and all personal property of whatever kind herein

mentioned, shall not vest in the said Coverdill and the said Buffington or either of them, but shall remain the property of the said Seymour until the above described note and all interest and attorney's fees are fully paid according to its face and tenor, effect and reading, when the title to the said property shall pass to the said Coverdill and the said Buffington. The said vendor's lien and the reservation of title being to secure the prompt payment of said note, neither of which is waived by taking the other. 3d. It is agreed that Coverdill and Buffington shall carry on said lumber business at Rock Island, selling for cash, and at the end of each day they are to turn over the proceeds of such sales to the said Seymour or his agent, authorized by him to receive the same, to be credited on said note, except that it is agreed that a part of said cash proceeds may be used by said Coverdill and Buffington, to purchase from said Seymour articles, lumber, etc., for the purpose of replenishing said stock, at the option of said Seymour. It is also agreed that with the consent of the said Seymour or his agent, sales may be made on a credit, to be paid on or before the maturity of the note above mentioned, the money, when collected, to be paid to said Seymour or his agent as aforesaid, to be credited on said note. It is also agreed that for the purpose of receiving said daily sales, and of protecting his interest in the premises, the said Seymour or his agent shall have access to the yards, buildings, etc., and shall be afforded all the opportunities necessary for that purpose by the said Coverdill and Buffington. It is agreed that certain sash, doors, and lumber ordered by said Seymour to be shipped to him at Rock Island shall be embraced in and form a part of the stock described as being situated on the lots conveyed hereby, and to become the property of the said Coverdill and Buffington upon the payment of said note, interest, etc., but the title to remain in the said Seymour until such payment. Witness my hand this 8th day of August, A. D. 1898. (Signed) S. K. Seymour."

A note for the purchase money was executed, as recited, and as further security for it, Coverdill & Buffington executed to Seymour a mortgage on a stock of lumber in another lumber yard owned by them, containing the same stipulation concerning sales upon credit and application of proceeds of sales as those in the foregoing instrument.

This action was begun by an application made by Seymour, before the maturity of the note, to the district judge for the appointment of a receiver for both stocks of lumber upon the ground, substantially, that the defendants were violating the terms of the contract concerning credit sales and application of cash received and thereby dissipating the security. A receiver was appointed and took and held possession of the mortgaged property for some time, but was discharged pending the suit. Plaintiffs amended their pleadings after the maturity of the note.

Besides the balance alleged to be due upon the note after allowance of some small credits, the petition sought to recover a balance alleged to be due upon an account for the price of the sash, doors, and lumber

mentioned in the last sentence of the instrument copied above. As to this claim, the petition made the following allegation: "And as additional security for the said note, the defendants agreed that certain cars of lumber, sash, and doors ordered by plaintiff to be shipped to him, plaintiff, at Rock Island, but which had not arrived, and which formed no part or parcel of said lumber, shingles, etc., on the lots above described, and which defendants agreed they would purchase from plaintiff upon its arrival at said town, should, for the purpose of security, be considered a part of the original stock and to pass to defendants therewith upon the payment of said note, as clearly appears from the stipulation with reference thereto in said contract, as follows, to wit: 'It is agreed that certain sash, doors, and lumber ordered by said Seymour, and to be shipped to him at Rock Island, shall be embraced in and form a part of the stock described as being situated on the lots conveyed hereby and to become the property of said Coverdill and Buffington upon the payment of said note, interest, etc., but the title to remain in the said Seymour until such payment;' that it was understood between the parties that said cars of lumber, etc., were to be paid for in cash upon their arrival; that thereafter said cars of lumber, etc., arrived, and were inventoried and sold to defendants on respective days of their arrival and at prices below named, which prices were, at the time of such sale, agreed to by plaintiff and defendants, and whereby they became liable and promised, then and there, to pay plaintiff said sums of money therefor, to wit: August 20, 1898, one car load of shingles and moulding for $282.41; on August 27, 1898, one car load of sash and doors for $607.80; on August 31, 1898, one car load of lumber for $197.93, being a total of $1088.14; that defendants failed to pay for said lumber, etc., as agreed, but have only paid thereon the sum of $828.32, leaving a balance due by them to plaintiff thereon of $259.82."

The defendants excepted specially to this allegation on the ground, substantially, that it sought to vary the written contract by the terms of which the sash, doors, and lumber were conveyed in consideration of the cash payment and the note, and there were no allegations showing fraud or mistake in the drafting of such instrument, which exception was overruled. The defendants, by their pleadings, also denied that they were to pay for this property any sum besides those mentioned in the writing, and claimed that all payments made should be credited on the note, and sought, by plea in reconvention, to recover damages on the ground that the appointment of the receiver and the taking of the property from their possession was wrongfully obtained by plaintiff upon false allegations. To the claim for damages, also, the court sustained exceptions.

At the trial, the court admitted, over defendant's objection, parol evidence of an agreement concerning the sash, etc., such as that alleged, contemporaneous with the written contract, and that the defendants, at their request, were allowed to take them when they arrived without prepayment of the price. As to this there was a conflict of testimony, defendant's evidence tending to show that all the property mentioned

in the writing was sold for the price therein mentioned. The jury found for the plaintiffs upon all the issues, and the judgment rendered on their verdict was affirmed by the Court of Civil Appeals.

1. It is plain that the petition does not seek a reformation of the written instrument upon the ground that, on account of fraud or mistake, it was so drawn as not to truly state the contract. The plaintiff relies on its terms as it stands, and his proposition is that it is to be construed as having the effect stated in the petition, or that, at least, it is not inconsistent with the existence of a separate agreement for the sale of the sash, etc., as alleged.

It is clear to our minds not only that the contract does not state the agreement contended for, but that it excludes it. By express terms it conveys the stock of lumber, situated as described, and then stipulates that the sash, etc., shall be embraced in and form a part of such stock. It states what the vendees are to do in consideration of the conveyance, i. e., to make the cash payment and give the note, and that all of such property is to become the property of the vendees upon payment of the note. The contention, in substance, is that the sash, etc., was not embraced in the stock conveyed by the writing and was not to pass upon the doing of the specified acts by the vendees, but that they were sold and passed only by a separate contract and in consideration of other things to be done by the vendees. A more direct conflict could hardly exist. If the purpose of the mention of the sash, etc., in the writing was simply that stated in the petition, it was not expressed, but a different one was.

It is true that sometimes parol evidence of a consideration different from or additional to that stated in a writing may be received without violating the rule that parol evidence will not be admitted to vary, contradict, or add to the written contracts of parties. It is unnecessary that we should restate the limits of this doctrine, so often explained. It certainly has no application to a case where the considerations for the acts or agreements of one party are the undertakings of the other and both are stated in the writing, which is the case here. If it is admissible for the vendor to show that the vendees were to pay more for the property than stated in the contract, it would be equally admissible for the vendees to show that the vendor was to deliver more lumber or other property for the price stated. This would wholly ignore the rule on the subject.

It is sometimes the case that the writing represents only a part of the contract, the other parts being expressed orally; and in such cases, those parts not reduced to writing which are consistent with the writing, may be shown. But this rule has no application, for the reason that the stipulations of the parties about the matter in controversy were put in writing and the effort is to show an inconsistent agreement. Belcher v. Mulhall, 57 Texas, 17. Nor, for the same reason, can the agreement alleged by plaintiff be regarded as an independent sale or a contract collateral to that expressed in the writing. Thomas v. Hammond, 47 Texas, 52. None of the authorities cited by counsel

for defendant in error sustain their contention, and the case falls within none of the exceptions to the rule which excludes parol evidence to vary or contradict a written contract. The ruling of the court upon the special exception, the admission of parol evidence to show the agreement alleged by plaintiff, the charge of the court upon that point and the verdict and judgment, are all erroneous. The judgment must therefore be reversed, but, in order that plaintiff may amend his pleadings and show, if he can, fraud or mistake in the reduction of the contract to writing by which it was made to misrepresent the true agreement, the cause will be remanded.

The only other ground of error assigned in this court, the sustaining of plaintiff's special exceptions to defendant's several claims for damages, is not so presented by statement of the matter in the record affecting it as to require that we consider it as a ground for reviewing the judgment below; but, as the case is to go back for another trial, we have examined the plea and exceptions and are of opinion that the latter were properly sustained. We do no intend, however, to express any opinion upon the question whether or not a plaintiff who wrongfully procures the appointment of a receiver may be held liable for damages resulting to defendant from such appointment and the consequent taking of his property. That question is not presented, since none of the items claimed as actual damages could be recovered of plaintiff under any view that might be taken of it. Such items consist either of loss resulting from the acts of the receiver after his appointment, or of credit, or of speculative profits. The sums alleged to have been paid by defendants can be allowed as payments, if defendants should be found entitled to them, and hence are not to be treated as damages. So the costs of suit and of the receivership may be properly adjudged by the court without allowing a recovery of them by defendants as damages.

### ON MOTION FOR REHEARING.

Opinion Delivered June 14, 1900.

WILLIAMS, ASSOCIATE JUSTICE.—Defendant in error asks us to review our decision and affirm the judgment, and, in case this can not be done, abandons his right to have the cause remanded for the purpose specified in the previous opinion, and requests that the proper judgment be rendered upon the pleadings as they now are. Since the recovery upon the account set up in the petition was the only reversible error found in the proceedings, we think it is proper that upon this request, judgment be rendered for the amount of the note after deducting all payments made by appellant. The jury found certain payments to have been made upon the note and found that a balance of $259.42 of the account remained after deducting payments applied to it. As the original amount of the account was $1088.24, it follows that $728.82 had been applied as payments on it which must go as a credit

on the note. The verdict does not give the dates of these payments, but they seem to have been made during August, 1898, and will be applied as of date August 15, 1898. This will give a practically correct result. The motion will be granted so far as to render judgment for defendant in error for the amount of the note after deducting the payments found by the jury and the further sum just stated, and the attorney's fee upon such amount, and for $3.95 for other lumber sold, and foreclosure of mortgage, and the costs of the District Court will be adjudged as in the judgment of the Court of Civil Appeals. But costs of appeal and writ of error will be adjudged against defendant in error. In other respects, the judgment will conform to that of the Court of Civil Appeals.

*Reversed and rendered.*