### HOPKINS v. CITY OF DALLAS.
#### (No. 11587.)

Court of Civil Appeals of Texas. Fort Worth. April 23, 1927.

Rehearing Granted June 4, 1927. Rehearing Denied July 16, 1927.

1. **Evidence** ⬤⟾448—**Evidence of parol representations as to intended use of land is inadmissible to vary unambiguous option contract.**

Evidence of parol representations that water reservoir to be constructed on land could be used as a pleasure resort, and that electric interurban line would be constructed, is inadmissible to vary a specific and unambiguous written option for sale of land to city, in absence of allegations of omission, from the contract through mutual mistake, accident, or fraud.

2. **Vendor and purchaser** ⬤⟾18(½)—**It is not fraud for city under clear option contract to claim right to purchase land therein agreed to be sold.**

It is not fraud on a landowner for a city under an option contract to claim a right specifically given by the contract to purchase strip of land above high water line to be established by survey.

3. **Specific performance** ⬤⟾117 — **Landowner may prove under general denial, in city's suit for specific enforcement of option contract, that survey was incorrect.**

Landowner may prove under general denial, in city's suit for specific enforcement of option contract, that high water line as fixed by city engineer in surveying for reservoir was incorrectly established.

4. **Vendor and purchaser** ⬤⟾18(3)—**City's failure to notify landowner within contract period of specific portions of land it elected to purchase rendered option contract unenforceable.**

City's failure to notify landowner, within six months' period as required by contract granting city option to purchase land for reservoir, of specific portions of land which it elected to purchase, rendered contract unenforceable, even though due notice was given of election to exercise option.

Appeal from District Court, Denton County; C. R. Pearman, Judge.

Suit by the City of Dallas against George M. Hopkins. Decree for plaintiff, and the defendant appeals. Reversed and rendered.

Hopkins & Koons, Owsley & Owsley, and Boyd & Boyd, all of Denton, for appellant.

Sullivan, Speer & Minor, of Denton, and Jas. J. Collins, Hugh S. Grady, W. Hughes Knight, and H. P. Kucera, all of Dallas, for appellee.

DUNKLIN, J. The motion for rehearing filed by the appellant is hereby granted; the judgment of this court heretofore rendered on April 23, 1927, affirming the judgment of the trial court, is hereby set aside; the opinion heretofore filed on April 23, 1927, is withdrawn; the judgment of the trial court is reversed, and judgment is here rendered in favor of the appellant, and the opinion filed herewith is filed as a substitute for said original opinion.

#### Opinion.

This suit was instituted by the city of Dallas against George M. Hopkins to enforce specific performance of the defendant's contract in writing to convey to the plaintiff a tract of land therein described, upon the terms and conditions therein stipulated.

The case was tried before a jury and upon the conclusion of the evidence offered by the plaintiff, both parties moved for an instructed verdict upon the evidence introduced; the defendant offering no evidence whatever in rebuttal of that offered by the plaintiff. The court overruled the defendant's motion, but granted the motion made by the plaintiff and instructed a verdict in its favor. From a judgment rendered upon the verdict returned in obedience to the instruction, the defendant has prosecuted this appeal.

The contract sued on is as follows:

"The State of Texas, County of Dallas:

"Whereas, the city of Dallas is considering the location of a reservoir site as well as its other incidental waterworks facilities; and whereas, it is the desire of the city of Dallas to obtain an option of purchase on suitable lands therefor in order to determine upon the location of such water impounding reservoir and waterworks facilities; and whereas, the owners of the hereinafter described land, for the consideration hereinafter stipulated, agree to give an option of purchase to the city of Dallas for the said land upon the terms herein stated and for the period herein stated; now, therefore, witnesseth this agreement of option to purchase said land as follows, to wit:

"1. That Geo. M. Hopkins, of the county of Denton, state of Texas, for the consideration of eighty ($80.00) dollars, cash in hand paid by

the city of Dallas, the receipt of which is hereby acknowledged, do hereby, as owner of the hereinafter described land, covenant and agree, and do hereby grant unto the city of Dallas, an option to purchase the hereinafter described land at forty-nine ($49.00) dollars per acre, in the event the city of Dallas should determine within the time herein stipulated for said option to make a selection of said land for the location of its water impounding reservoir and other waterworks facilities, and provided further that the city of Dallas shall exercise the option herein granted unto it within a period of six months from the date of the execution of this instrument, unless the time is extended in writing by the parties.

"2. That should the city of Dallas decide to exercise the option of purchase herein stated within the time of six months, or any extended time, it shall, by and through its duly authorized officers and agents, in writing, request the said owner to furnish unto it an abstract of title to the said lands hereinafter described showing a good and marketable title in the said owner, satisfactory to the legal department of the city of Dallas, and upon receipt of said written request it shall be the duty of the said owner to furnish said abstract of title forthwith not later than 30 days from the receipt of the said written request aforesaid, and the city of Dallas shall thereupon examine the said abstract of title, and, if found satisfactory to the said legal department, the said owner shall execute a satisfactory conveyance, either a general warranty deed or otherwise, to the said land, conveying unto the city of Dallas the fee-simple title therein for the consideration per acre, or the consideration recited herein to be paid, which consideration shall also include the amount paid for this option. That should any defects be discovered in the said title it shall be the duty of the owner to make good the said title not later than thirty days from the date of receipt of such written objections to the same. That in case the said owner should fail or refuse to furnish said abstract of title or in case the said owner cannot furnish title to the said land satisfactory to the said legal department within the time herein stated, the said owner shall return the said option money or consideration paid by the city of Dallas as hereinabove set forth, provided, however, that where an abstract of title is furnished by the owner and examined by the legal department of the city of Dallas and found defective, the city of Dallas may waive any such defects, in writing and accept the land, or, if the city of Dallas determines that by condemnation proceedings such defects may be cured, the city may exercise such option and institute condemnation proceedings for the said land, and the amount herein set forth to be paid to the said owner shall be the basis for the amount due the said owner for the said land, provided further, that should any owner fail to furnish an abstract of title as provided herein the city of Dallas may, if it deems it advisable, obtain an abstract of title for the said land at the cost of the said owner provided the city of Dallas shall never be deemed to exercise this privilege unless the same is evidenced by a resolution of the board of commissioners of the city of Dallas. That in case the said privilege is exercised the cost shall be deducted from any consideration paid for said land. That in the event the said owner should fail or refuse to return the said option money to the city of Dallas as herein provided, a lien shall be retained on the said land for the same.

"3. That in case the said owner shall fail or refuse to exercise a proper conveyance conveying the said property to the city of Dallas, the city of Dallas shall have, in addition to all other remedies, the right of specific performance requiring the said owner to perform the said contract of purchase for the consideration herein stipulated.

"4. That should the city of Dallas fail to exercise the option herein provided for within the time herein stipulated, or should the city of Dallas, during the said time, by a resolution of its board of commissioners, determine that the said land is not suitable for the location of its water impounding reservoir and other waterworks facilities, the said option hereby conferred and granted unto the city of Dallas shall cease and be of no further effect, and the owner shall be entitled to keep and retain the amount so paid for the said option, which shall be in full satisfaction of any and all claims for compensation or otherwise growing out of the said transaction, and no other damage, right, or remedy shall in any case be collectable, enforceable or available to the said owner.

"5. That the said property for which an option of purchase is hereby granted and conferred upon the city of Dallas by the owner hereof is described as follows, to wit: Situated in Denton county, Texas, being the north one-half of the John F. Daniels 160 acre survey, and being the same property conveyed to Geo. M. Hopkins by H. Smoot et ux. by deed dated 22d day of November, A. D. 1916, recorded in book 135, p. 502 of the deed records of Denton county, Texas.

"It is understood and agreed that the option of purchase hereby granted covers only that part of the above-described land as will be needed by the city of Dallas for a part of the reservoir site, and to include 150 feet beyond the high water line as to be established by the city of Dallas; and it is further understood that the city of Dallas shall not at any time rent, lease, or sell any portion of the land herein conveyed between the land reserved and the water line to any person for private purposes.

"The land accepted by the city of Dallas under this option shall be paid for on actual survey, and the surveying shall be done by the city of Dallas, and seller shall be paid for any excess in the survey, to which he can show title.

"No part of the land herein conveyed constitute any part of my homestead or claimed by me as such.

"6. The owner agrees that he will not revoke in any manner the option of purchase hereby conferred upon the city of Dallas, nor sell or incumber said real estate or any part thereof during the continuance of the said option of purchase. In this connection, however, it is distinctly understood that the said owner may continue in the use of the said land, using and cultivating the same, during the period of the option hereby granted and conferred upon the city of Dallas; and in case the city of Dallas exercises the option herein and purchases the said land, said owner may continue in the use of the said land using and cultivating the same until the 31st day of December, A. D. 1924, and 1924 crops are reserved by owner, and will give the city of Dallas immediate peaceable posses-

sion of same upon demand, provided the owner shall continue in such use at ―― own risk and no damage of any kind shall be claimed against the city of Dallas.

"7. That in the event of sale taxes will be prorated for the then current year.

"8. That the terms of this option contract shall be binding upon the parties thereto, their heirs, successors, assigns and administrators, provided that the city of Dallas shall be bound hereby when the same is accepted by its agent as hereinafter shown and the said acceptance is duly approved by the mayor and board of commissioners of the city of Dallas by a resolution passed thereunto.

"In testimony whereof, witness my hand this the 7th day of February, A. D. 1924.

　　　　　　　"Geo. M. Hopkins, Owner.

"Accepted by the City of Dallas, by Chas. G. Thomas, Agent. S. B. Scott.

"The State of Texas, County of Denton:

"Before me, the undersigned authority, a notary public in and for the county of Denton, Texas, state of ――, on this day personally appeared Geo. M. Hopkins, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office, this the 15th day of February, A. D. 1924. Lillie Marie Thomas, Notary Public, Denton County, State of Texas. [Seal.] "

The uncontroverted evidence introduced upon the trial established the following facts: On February 11, 1924, which was four days after the execution of the contract above, the board of commissioners of the city of Dallas, by Chas. G. Thomas and S. B. Scott, their agents, passed a resolution ratifying and confirming the contract.

On May 26, 1924, the board of commissioners of the city of Dallas adopted another resolution reciting the execution of the option contract; that the city had authorized the issuance of the bonds in the sum of $5,-000,000 for the improvement of its waterworks supply and waterworks system; that it had employed hydraulic engineers for the purpose of investigating all available water reservoir sites within the county of Dallas and outside thereof, in order to furnish the city an adequate supply of water; that the engineers so employed, after an exhaustive study, had recommended the selection of reservoir No. 4, known as the Garza reservoir, for a storage reservoir, with the statement made by the engineers that the same would have a capacity at spillway level of 63,000,000,000 gallons of water, or, in case flash boards 2 feet in height are used, a capacity of 70,000,000,000 gallons, which, in the opinion of the engineers, would supply the needs of the city for a period of from 40 to 50 years. The resolution further recited that the reservoir site so recommended by the engineers was then and there chosen; that the same was situated about two miles east of the town of Garza, in Denton county; and that the site so chosen embraced the defendant's land. The resolution further provided that:

"The city secretary is hereby directed to notify all persons who have executed option contracts to the city of Dallas that the city of Dallas has determined upon the location of the said reservoir so as to include their said lands, and the city of Dallas desires that they shall, in accordance with the terms of said option contracts, furnish to the authorized officers and agents of the city an abstract of title to the said lands covered by the said options showing a good and marketable title to the said owners thereof satisfactory to the legal department of the city of Dallas as provided by the terms of the said options; that the city secretary shall send a registered letter to each owner showing that the city of Dallas has exercised its said option in accordance with the said contracts; that in addition to the notice to be sent by the city secretary the city of Dallas may notify all such owners of land by any other officer or agent in writing to the effect that it has exercised its said option to purchase the said land and request that the said owners comply with the said option contracts; that the said Garza site so recommended by the said engineers be and the same is hereby officially approved and declared to be the reservoir site selected; that this resolution shall take effect from and after its passage as in the charter in such cases made and provided."

On the same day that resolution was adopted, the city secretary mailed to the defendant the following notice:

　　　　　　　"Dallas, Tex., May 26, 1924.

"Dear Sir: I beg to advise you that at a meeting of the board of commissioners of the city of Dallas it was officially determined by the said board of commissioners to locate a water reservoir upon what is known as the Garza site, which location includes the land owned by you and on which you executed to the city of Dallas an option to purchase. I beg to advise that in accordance with the terms of the said option we now and here request that you furnish to the legal department of the city of Dallas an abstract of title to your said land showing a good and marketable title satisfactory to the said legal department and in accordance with the terms of your said option.

"The city of Dallas will be pleased to aid and assist you in any way so as to expedite the closing up of this matter, which we feel sure you are anxious to have done. Awaiting an early reply, I beg to remain,

　　　　"Very truly yours,
　　　　　　　"M. G. James, City Secretary."

On June 6, 1924, the city attorney of Dallas also wrote to the defendant the following letter:

"Mr. G. M. Hopkins, Denton, Texas—Dear Sir: I beg to advise you that the firm of Sullivan, Speer & Minor, of Denton, has been retained by the city of Dallas to do and perform services in connection with its legal department, and that your abstract should be submitted for examination to such firm of lawyers.

"In this connection I beg to advise you that for the purpose of facilitating the work of examining your abstract we would recommend to you that you obtain an abstract from those com-

panies that own their own abstract books and records. It appears that the companies owning their own abstract books and records have a complete and more reliable title to the land located in Denton county.

"You may turn your abstract over to Messrs. Sullivan, Speer & Minor and they will give the examination of same prompt attention.

"Awaiting an opportunity to be of service to you, and hoping you will be able to take advantage of the services of Sullivan, Speer & Minor as well as our own in aiding and assisting you, I beg to remain,

"Very truly yours,
    "Jas. J. Collins, City Attorney."

K. F. Hoefler, a civil engineer, was employed by the city to locate and construct the reservoir, and in obedience to that employment he surveyed out the land needed for that purpose about the middle of July, 1924. The survey so made included 77.8 acres of the tract of land covered by the option given by the defendant to the city, and included all of that tract lying below the high water line as fixed by the engineers. The land sued for was the same as that described in the field notes of the engineer who made the survey, but the defendant was not notified by the city of that survey and the selection of the land included therein as the portion of the 80-acre tract it had decided to purchase until after the expiration of the six months' option period, beginning February 7, 1924, and ending August 7, 1924.

On May 27, 1924, the defendant furnished to the plaintiff an abstract of title to the land covered by the option. That abstract was placed in the hands of the attorneys employed by the city for examination, but during the six months' option period the city made no report to the defendant as to whether or not the title was satisfactory, nor did it return the abstract to the defendant within that period with any statement of any defects found therein, coupled with a request that the same be cured.

Mr. Fred H. Minor, of the law firm of Sullivan, Speer & Minor, testified that on or about June 15, 1924, his firm was employed by the city of Dallas to examine abstracts of title for the city reservoir of Dallas, to be located in Denton county; that J. W. Sullivan examined the title to the land of George M. Hopkins and rendered an opinion on that title of date September 9, 1924. He further testified that some time in the fall of 1924 he met defendant, Hopkins, at the foot of the stairway leading to defendant's office, in the town of Denton, and inquired of Hopkins why he did not meet the objections made to the title to the land in controversy. Witness further testified that his firm had already mailed to Hopkins the opinion on the title which Hopkins said he had not received. Witness further testified that Hopkins then told him that he did not intend to carry out the option contract with the city because the option period had expired.

In plaintiff's pleadings, it tendered the full amount due the defendant as the purchase price for the land sued for, according to the terms of the option contract. It also specially alleged that if the amount so tendered was insufficient by reason of any error in the description of the land, it stood ready to pay any additional amount. Attached to the petition was an opinion written by Sullivan, Speer & Minor, plaintiff's attorneys, pointing out certain alleged defects in plaintiff's title. However, plaintiff further alleged that it had elected to waive such defects and perform its contracts of purchase, regardless thereof, and had tendered to the defendant a proposed deed of conveyance to be executed by him in connection with an offer to pay the contract price for the land, but that defendant had refused to execute the same.

In addition to a general demurrer, a general denial, and certain special exceptions which are not necessary to be noticed, the defendant pleaded specially that he was induced to execute the option contract by fraudulent representations on the part of plaintiff's agent, to the effect that if defendant would execute the option contract, the plaintiff, in the event it should exercise the option so given, would construct a reservoir which would be a pleasure resort for boating, hunting and fishing, and that plaintiff would construct a public driveway around the same on the 150-foot strip of defendant's land above the high-water line, and that the defendant would have the privilege of the use of said driveway and the use of the reservoir for fishing, hunting, boating, and other pleasures, and that plaintiff would pay the defendant for the land so taken within less than 60 days from the date of the option contract. It was further alleged that the option was given in contemplation that an interurban electric railway line running in the vicinity of defendant's land would soon be constructed and that that improvement, together with the proposed construction of the reservoir, would greatly enhance the value of defendant's land not covered by the option, which prospective enhancement was a material inducement to the defendant to execute the option, and that in view of the premises the time within which plaintiff was to exercise his option was of the essence of the contract.

[1] The court did not err in sustaining plaintiff's exceptions to the matters thus specially pleaded. The stipulation in the contract for the consideration to be paid by plaintiff to the defendant for the property was contractual, specific, and unambiguous, and the matters specially pleaded would, if proven, vary and add to that stipulation, and therefore clearly would be in violation of the parol evidence rule; all in the absence of any allegation that the matters so pleaded were omitted from the written in-

strument through mutual mistake, accident or fraud. Winkler v. Creekmore (Tex. Com. App.) 256 S. W. 257; Coverdill v. Seymour, 94 Tex. 6, 57 S. W. 37; Rapid Transit Ry. Co. v. Smith, 98 Tex. 553, 86 S. W. 322; Lanius v. Shuber, 77 Tex. 24, 13 S. W. 614; Matheson v. Live Stock Co. (Tex. Civ.App.) 176 S. W. 734, and decisions there cited.

[2, 3] There is no merit in the further contention that the court erred in sustaining an exception to a further special plea by the defendant that the high-water line established by the surveyor was falsely and fraudulently located so as to include a valuable portion of defendant's land which was not covered by the option contract. Under the plaintiff's contract it was given the option to purchase such portion of the 80 acres specifically described in the contract as might be needed by the city in the construction of its reservoir site, and to include 150-foot strip above the high-water line to be established by the city. It could not be a fraud on the defendant to claim the legal so clearly and specifically given by the contract; and under the defendant's general denial, without any special pleading to that effect, the defendant had the right, if he saw fit so to do, to introduce any evidence which would tend to show that the high-water line as fixed by the city engineer was incorrectly established. This he failed to do, but elected to stand solely upon the testimony of the engineer as to that issue.

[4] The defendant further pleaded that he furnished to plaintiff, on May 27th, a complete abstract of title, and that plaintiff failed within the six months' option period to indicate to him whether or not the title was satisfactory, and failed within the same period to exercise the option of purchase, and therefore it was not entitled to a specific enforcement of the contract.

That time was of the essence of the option contract given to the city by Hopkins is well established by all the authorities. As expressly stated in the contract, the city bound itself to take only such portions of the defendant's land as it might need for a reservoir site. And in order to exercise its option within the six months' period allowed by the contract therefor, it was necessary for the city not only to determine what portions of the defendant's land it exercised its option to purchase, but also to notify the defendant what portions it had so elected to purchase. The contract gave to the city the right within the six months' period next ensuing after its date to buy such portions of plaintiff's land as it might desire to use for reservoir purposes. Prior to such election there could be no contract of purchase made, but if such election had been made and the defendant had been notified thereof, then an executory contract of purchase and sale between the parties would have resulted, which would have been enforceable by either party as against the other. However, the defendant was not notified within the six months' period of the election to purchase any particular portion of his land. The resolution passed by the board of commissioners was in general terms, to the effect that it had exercised the option given by the terms of the contract, but neither in that resolution nor in the notice thereof mailed by the secretary to Hopkins was there any designation of any particular portion of plaintiff's land which the city desired and had determined to buy. In fact, as noted above, the survey of the land by Hoefler, the engineer, was not made until after the adoption of the resolution by the board of commissioners, and after the notice of same was given to Hopkins by the city secretary. Under such circumstances, the city assumed no obligation to Hopkins under the terms of the contract within the six months' option period which the latter could have enforced either by suit for specific performance or by action for damages; and, since there was no mutuality of remedy between the parties, the city was not in a position to specifically enforce the contract against the defendant, Hopkins. McMurtry v. Hodges (Tex. Civ. App.) 278 S. W. 866; Rosen v. Phelps (Tex. Civ. App.) 160 S. W. 104; Keen & Wolf Oil Co. v. Fulenwider (Tex. Civ. App.) 284 S. W. 322; Zanderson v. Sullivan, 91 Tex. 499, 44 S. W. 484; Jones v. Carver, 59 Tex. 293.

In James on Option Contracts, § 514, p. 220, the following is said:

"We have seen that the effect of a timely exercise of the right of election by the optionee, is to convert the option contract into a binding promise on the part of the optionor to sell, and where the election meets the requirements of the statute of frauds, an agreement of sale and purchase is raised, an agreement which is enforceable by either party against the other. It follows, therefore, in the latter case, that when this event takes place, the optionee becomes vested with the equitable title, the rule being that the optionor holds the legal title in trust for the optionee and the optionee holds the purchase money for the optionor; in other words, upon exercising the option, the optionee becomes the equitable owner of the land and the optionor the equitable owner of the purchase money. And a timely election, and payment of the price where necessary, relate back to the date of the option and thus protect the optionee against subsequent purchasers of the optioned property with notice of the rights of the optionee."

Since the proof showed without contradiction that the city did not within the six months' option period elect to purchase any definitely described portion of defendant's land and notify the defendant of such election, it showed no right to the relief prayed for, and the defendant's motion for an instructed verdict in his favor should have been granted.

Accordingly, the judgment of the trial court is reversed, and the judgment is here rendered that the city take nothing by its suit.