## KILLAM v. ERLICH.
### No. 9983.
Court of Civil Appeals of Texas.

Austin.

Oct. 31, 1951.

Rehearing Denied Nov. 14, 1951.

Scarborough, Yates, Scarborough & Black, Abilene, Black & Stayton, Austin, by Charles L. Black, Austin, for appellant.

Paul Petty, Ballinger, Wagstaff, Harwell, Wagstaff & Alvis, R. M. Wagstaff, all of Abilene, for appellee.

ARCHER, Chief Justice.

This action was brought by appellee as plaintiff against appellant as defendant to establish appellee's ownership of an undivided one-half interest in oil and gas leases upon two tracts of land in Runnels County, Texas, known as the J. Pettus Knight tract of 351.7 acres, and the Walker tract of 100 acres, in Runnels County, Texas.

Oil and gas leases on the Knight tract of 351.7 acres were acquired by Frank Pethybridge, the leases being executed by J. Pettus Knight, the land owner, and various parties who owned mineral interests, during the month of November, 1949. The Walker lease covering an undivided one-half interest in the 100 acres was executed to Frank Pethybridge on January 19, 1950, and the Fischer lease, covering the other undivided one-half interest in the 100 acre tract was executed to A. M. King on February 15, 1949, and was assigned to Frank Pethybridge by A. M. King on February 10, 1950.

Sometime in November, 1949, Lou Erlich, appellee, looked over the properties with Pethybridge and agreed to buy an interest in the same when the deal was together. On March 10, 1950, Erlich met Pethybridge and purchased an undivided one-half interest in the leases for a total sum of $7,000.00.

Pethybridge was to mail to Mr. Erlich at Las Vegas, Nevada, the assignments of his interest in the leases. An instrument was executed by Pethybridge on March 20, 1950, and sent to Mr. Erlich, but such instrument was not satisfactory to him and he did not accept it.

The leases from J. Pettus Knight, et al., to Pethybridge required payment of delay rentals on March 1, 1950, which had not been paid; however, after conference with A. M. King representing certain royalty holders, and R. E. Bruce, one of the lessors, Pethybridge had prepared a ratification of said leases, which ratification was in process of being signed by the land owners (it was actually signed by owners of 13–16 of the mineral interests before being destroyed.) This instrument was not destroyed until after Pethybridge had agreed to his contract with Killam, and was not destroyed until after King had determined, at Knight's request, that its destruction would be satisfactory to Pethybridge.

On or about March 27, 1950, Pethybridge entered into an oil contract with Frank Carroway, in charge of one of Killam's rigs, to drill a well down to 2400 feet and the well was drilled to a depth of .1190 feet and further payments were made by Pethybridge, but the well was shut down after two checks for $1,000.00 each were not paid.

Pethybridge made a trip to California in an effort to interest a concern in California in financing the drilling, but was unsuccessful, and on his return, found the well shut down and that O. W. Killam had top leased his leases on the Knight tract, taking new leases in his own name from the land owners, and also found that Carroway had placed a mechanic's lien for $10,177.00 on all leases owned by Pethybridge in Runnels County.

On April 28, 1950, Killam told Pethybridge he would move the rig and refused to continue drilling unless Pethybridge transferred the deal to him. Pethybridge assigned the J. Pettus lease, the Walker-Early lease, and 378 acres known as the Reams lease, retaining an oil payment of $45,000.00 to be paid out of ⅛th of ⅞ths interest in the Knight lease only.

Before entering into the contract with Killam, Pethybridge testified that he notified Killam that Erlich had an interest in the properties.

On April 26, 1950, Erlich was informed that Pethybridge had assigned the leases in controversy to Killam, and that a well was being drilled. Erlich went to see Killam and was shown a copy of the contract, and had a conversation with Killam, and on the trial testified that Killam recognized his half interest but Killam denied any such admission. Erlich returned to Abilene and secured from Pethybridge an assignment of a 248-acre Davis lease and one-half interest in the $45,000.00 oil payment; in this connection, Pethybridge and Erlich both testified that this was in satisfaction of Erlich's interest in a 378-acre Reams lease.

After the well, a commercial producer, had been completed, Killam refused to admit that Erlich had an interest in the lease, and this suit was brought to establish an undivided one-half interest in the lease.

On trial before the Court with the aid of a jury, and on the verdict of the jury favorable to the plaintiff, judgment was entered for appellee. Motion for New Trial was overruled by the Court.

This appeal is before this Court on eight points assigned as error.

Points one, two, three, and four to the effect that the jury's finding that the Killam leases were in extension and ratification of the Pethybridge leases are not supported by the evidence, and that, as a matter of law, the Killam leases were not in extension of the Pethybridge leases; that the evidence shows that the lessors refused to extend or ratify the Pethybridge leases because there was no obligation to drill a well and the Killam leases were in consideration of an agreement to drill a well; that the Killam leases are in writing and fully state the rights and obligations of the parties, and parol evidence that the leases were in extension of the Pethybridge leases is, by reason of the parol evidence rule, of no probative force.

The Court submitted Issue No. 1: "From a preponderance of the evidence do you find that the new leases executed by the owners of what is known as the J. Pettus Knight tract to O. W. Killam were in extension and ratification of the original leases executed by said owners to Frank Pethybridge? Answer Yes or No. Answer: Yes."

As has been stated, Pethybridge assigned to Erlich an undivided one-half interest in oil and gas leases on 701.7 acres of land in Sections 66 and 346, B.B.B. & C. R. Co. lands in Runnels County, Texas.

■ We sustain the appellant's first four assignments because we do not believe that the Killam leases are in extension and ratification of the Pethybridge leases for several reasons: (1) The leases are to Pethybridge alone in his leases and are to Killam alone in his leases, (2) the Pethybridge leases had expired according to their terms on March 1, 1950, and (3) that the ratification and extension agreement prepared by Mr. Pethybridge in an effort to preserve his lease rights was not executed and delivered by the owners (although the agreement was signed by some before it was destroyed), and then after Pethybridge had acquiesced in its destruction.

The leases to Killam were executed and delivered by the several owners late in April, 1950, and some fifty days after the expiration date of the Pethybridge leases, and in the J. P. Knight lease, the sum of $1.00 per acre was fixed as the deferment rental; in the Maverick lease a sum of $50.00 was fixed as a rental to cover the privilege of deferring the commencement of a well; in the Bertha R. Luckett, et al. lease, it was provided that lease would be for a term of one year, and provided that lessee would, within thirty days, go back into the J. P. Knight well No. 1 and drill and complete said well to a depth of 3950 feet or to a commercial production at a lesser depth; all of the Killam leases provided for the commencement of a well on or before the 25th day of June, 1950, or the payment of the sum of $50.00, except the Knight lease.

During the time the well on the Knight lease was being drilled under the Carroway agreement, and under which lease Car-

roway was to drill to a depth of 2400 feet, Killam, who owned the rig, ordered the drilling discontinued and stopped at 1190 feet. Killam having ascertained that the leases had expired took top leases on the J. Pettus Knight tract in his own name, and Pethybridge testified that Killam told him he would have to transfer the deal to him, and Pethybridge entered into a contract on May 1, 1950, with Killam and assigned the J. Pettus Knight lease, the Walker lease, and the 378 acre Reams lease. The conditions in the assignment of the leases are (1) a reservation of an oil payment of $45,000.00, (2) a loan of $1250.00 to Pethybridge, (3) the continued drilling of a well to a depth of 4000 feet, (4) provision for the payment of bills for the surface casing and other items, (5) the return of the two $1,000.00 checks, (6) the relinquishment of claims to 829.7 acres, and (7) the release by Killam of any instrument theretofore filed of record that might affect other property.

■ Since no well was begun or delay rentals paid prior to March 1, 1950, the Pethybridge leases terminated. Humble Oil & Refining Co. v. Davis, Tex.Com.App., 296 S.W. 285.

■ We believe that the execution by Pethybridge to Killam of the contract on May 1, 1950, effectively ratified, acquiesced in and agreed to the Killam leases, since those or some of those who had signed the Pethybridge ratification would not agree to its destruction until it had been determined that such destruction was satisfactory with Pethybridge. Mr. Pethybridge had complained that Killam had top leases, which indicates that he believed that the Killam lease was different from his. Then too, there is no evidence that any of the owners of a mineral interest in the Knight tract knew that Erlich claimed any interest in the Pethybridge leases.

It follows that since all of Pethybridge's leases had expired on account of failure to pay delay rental or to drill, the leases had terminated and anyone, including Killam, had the right to acquire any or all of the leases in controversy. Erlich had no greater right or interest in the leases than did Pethybridge, and his rights terminated with Pethybridge's rights.

■ To extend and ratify a lease, there is no new lease, simply an extension of the original lease; and to ratify a lease is to confirm it and not to execute a new one. Russell v. Erie R. Co., 70 N.J.L. 808, 59 A. 150, 67 L.R.A. 433; Capps v. Hensley, 23 Okl. 311, 100 P. 515.

The evidence that appellee relies on is the assignment by Pethybridge of the leases to Killam at a time subsequent to March 1, 1950, and after Killam had acquired the leases; the testimony of Bruce to the effect that execution of the Killam leases was satisfactory to Pethybridge; and that of King that Killam did not pay anything for the leases. Such testimony is not sufficient to support the jury's findings that the Killam leases were in ratification and extension of the Pethybridge leases. Texas Jurisprudence, Vol. 17, Sec. 353, p. 793; Coverdill v. Seymour, 94 Tex. 1, 57 S.W. 37; Harper v. Lott Farm & Improvement Co., Tex.Com.App., 228 S.W. 188.

■ Point No. 6 is that under his agreement with appellee, Pethybridge had authority to assign the Knight and Walker leases to Killam.

The contract between Pethybridge and Erlich is as follows:

"The State of Texas
County of Taylor

"This agreement made by and between Frank Pethybridge and Louis Erlich, witnesseth: Whereas, Frank Pethybridge is the owner of oil and gas leases covering 701.7 acres of land in Section 66 and 346, B.B.B. & C.R.R. Co. lands in Runnels County, Texas, located approximately 7 miles southeast of Winters, Texas, and desires to sell an undivided one-half interest to Louis Erlich for the consideration of Ten ($10.00) Dollars and other consideration, cash, the receipt of which is acknowledged on the signing of this instrument; Whereas, it is the desire of the parties hereto to be partners in said lease hereafter;

"Now Therefore Know All Men By These Presents:

"I, Frank Pethybridge, do hereby sell an undivided 1/2 interest in said leases to Lou Erlich for the consideration of Ten ($10.00), receipt of which is hereby acknowledged on the signing of this instrument, and it is hereby understood between the parties hereto that this partnership shall be limited to the joint ownership of said leases in the promotion of a well to be drilled on said property.

"Each partner herein shall use his best interests to promote said well, and the actual expenses that hereafter may be incurred in the development of said leases shall be paid out of the revenue derived therefrom, and any sum left after said expenses have been paid shall be equally divided between the parties hereto, share and share alike.

"Signed at Abilene, Texas, this the 20 day of March, A.D. 1950.

"(Acknowledgment)

"(Signed)   Frank Pethybridge"

We believe that Pethybridge had the legal right to make the assignment and contract with Killam, and did so in furtherance of the partnership interest since in this manner some benefits were secured to the partnership.

Mr. Pethybridge testified that he met Mr. Erlich in the early part of 1949, and that they drilled a shallow well in Shackelford County, and he discussed with Erlich the proposition of Erlich taking half interest in these leases he was acquiring in Runnels County, which Erlich subsequently purchased.

We believe that Erlich and Pethybridge were partners in this venture, being cotenants, and by virtue of the agreement to promote a well to be drilled, and that each partner should use his best interests to promote the well.

In Thompson v. Duncan, Tex.Com. App., 44 S.W.2d 904, 907, it was held: "Courts do not treat a joint venture as identical with a partnership, yet it is universally held that such relation is so similar in its nature to a partnership and in the contractual relation created thereby that the rights as to the members are governed by substantially the same rules that govern partnerships."

Then too, there was no mining partnership because there was no oil or gas well for them to operate, and they were not engaged in prospecting for oil or gas.  12 Tex.Law Rev., 410–419.

In Root v. Tomberlin, Tex.Civ.App., 36 S.W.2d 596, 601, writ refused, the Court said:

"In Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W.2d 1052, 1055, the Supreme Court said:

" 'The rule is that a mining partnership arises by operation of law where co-owners work a mine.'

"Here there was no mine to work, only a mine in contemplation."   See 68 C.J.S., Partnership, § 139, pp. 574–575.

The seventh point is that appellee has accepted part of the benefits of the contract between Pethybridge and Killam under which Killam acquired the Walker and Knight leases and has ratified and confirmed such contract and was estopped to repudiate the same.

In his pleading Killam alleged that Erlich had confirmed the contract by accepting a part of the benefits of said contract, and was estopped to assert any interest in the leasehold estates in the Knight and Walker tracts.

The assignment by Pethybridge to Killam conveyed the entire leasehold estate.

Pethybridge testified that Killam was vested with the entire leasehold estate in the 378 acre Reams tract.   In this assignment it is asserted that the lease and all rights thereunder or incident thereto are now owned by Frank Pethybridge, and no mention was made of an undivided interest in the leases.

On May 11, 1950, Mr. Erlich learned the details of the agreement between Pethybridge and Killam, and was shown a copy of the contract and the assignments of oil and gas leases to Killam and took the assignment of one-half of the oil payment and an assignment of the Davis lease.

Having thus accepted the benefits of such contract appellee is estopped to deny that the assignment of the leases to Killam did not convey the full title.

**424**

Other points made by appellee are not disposed of because they are immaterial in view of the holdings which we have made.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing by his suit.

Reversed and rendered.