# MARCH, 1923

WHITE, WARD & ERWIN v. F. B. HAGER.

No. 3573.    Decided March 7, 1923.

(248 S. W., 319.)

1.—Written Contract—Varying by Parol.

Plaintiff having, without fraud or misrepresentation as to its contents, entered into an unconditional contract in writing for the purchase of an automobile and given an unconditional promissory note for the amount of the deferred payment therefor, could not maintain suit for the rescission thereof and recovery of the purchase price, on proof of parol warranties and representations by the seller and parol agreement to rescind and return the purchase money if the machine was not as represented, which were not contained in the written contract, but only in the negotiations preceding its execution.  (p. 522).

2.—Same.

In the absence of fraud, accident, or mistake, oral agreements will not be permitted to contradict or vary the terms of a written instrument.  And where parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object and extent of such engagement, it is conclusively presumed that their whole undertaking was reduced to writing, and parol evidence is not admissible to add to, take from, or vary the terms of the written instrument.  Bigham v. Bigham, 57 Texas, 238, and numerous cases cited, discussed and followed. (pp. 522-528).

Question certified from the Court of Civil Appeals for the Fifth District, on error to the County Court of Dallas County.

The question being referred by the Supreme Court to the Commission of Appeals, Section B for their opinion thereon, the same is here adopted as the answer of the Supreme Court.

K. R. Craig and W. F. Bane, for plaintiffs in error.

The verdict of the jury having freed the written contract of all charges of fraud—there being no charge of accident or mistake—and the said written contract appearing on its face to be complete, as the pleading of the plaintiff indicated it was intended to be, and being free from ambiguity, stands as the sole repository of the terms of the sale, and to it alone, the court must look to determine the rights of the parties.  Gonzales College v. McHugh, 39 Texas, 348; Union Central Life Ins. Co., v. Chowning, 8 Texas Civ. App., 455, 28 S. W., 119; Kansas City Packing Box Co., v. Spies, 109 S. W., 435; Case Thresh. Mach. Co. v. Hall, 32 Texas Civ. App., 214, 73 S. W., 836; Traylor v. Evertson, 26 S. W., 637; Benjamin on Sales,

Sec. 621; Van Winkle & Co. v. Crowell, 146 U. S., 42, 35 Law Ed., 880; Century Electric Co. v. Detroit Copper Co., 264 Fed., 49; 23 Ruling Case Law, p. 1399, Sec. 224; 2 Wharton Cont., Sec. 665; 4 Am. & Eng. Ency. L. (2nd ed.), p. 568.

No briefs for defendant in error.

MR. JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

This cause is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals of the Fifth District:

"Suit pending in the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas.

### Statement.

The defendant in error. F. B. Hager, brought suit against the plaintiffs in error, White Ward & Erwin, and recovered judgment for the rescission of the sale of an automobile made by the latter to the former, and for the recovery of the purchase price paid therefor. The Guaranty Securities Company, a corporation, was joined as defendant on the allegations of Hager that a note was executed by him for part of the purchase money of said automobile and that said note had been transferred by plaintiffs in error to and was held by said corporation. Defendant in error alleged in substance that the plaintiff in error on or about the 15th day of July, 1915, called upon him and offered to sell him a new five passenger Overland automobile, model 75-B; that defendant in error then informed plaintiffs in error that he had never owned an automobile, had never had any experience in handling or operating one, and knew absolutely nothing about them, but that he would like to own an automobile provided he could buy one that he could operate and enjoy for the use of himself and family as an everyday service car over the roads of Dallas and adjoining counties in Texas; that unless he could buy a car that would render him such service it would be of no value to him and he did not wish to buy. That thereupon the plaintiffs in error represented that they had just the car defendant in error needed and had the car that would give him perfect service and full and complete satisfaction; that defendant in error then remarked that he would have to rely upon plaintiff in error's representations in the purchase of a car, if he dealt with them, and that in reply plaintiffs in error said: 'We are your local merchants and we could not afford to sell you a car and have you dissatisfied even if we wanted to, and you can buy the car from us and we will guarantee to you said car to be mechanically perfect in all its parts and to be suitable for the service for which you say you want a car, and we will guarantee

that said car will give you full and complete satisfaction; and if we cannot make it satisfactory to you we will agree that whenever you become finally dissatisfied with said car you may return same to us and we will make you whole, give you back the consideration paid us for said car.' Defendant in error further alleged that the plaintiffs in error represented that the gears of said car were perfectly fitted; that the engine and the pistons of the same were in perfect order and would give good service and satisfaction; that the motor was a good motor, and could be relied on to give good service; that the gears had never given any trouble and would operate to the satisfaction of the defendant in error; that said car was mechanically perfect and was not worn in any of its parts and was not defective, had no cracks or sand laps in the engine or radiator; that the ignition system and wiring throughout was in perfect order; that the rear gear system was properly meshed; that the engine was not broken nor cracked, nor damaged in any of its parts or in any way. That plaintiffs in error represented that the car and model that they were offering to sell defendant in error was not only a new automobile, but was a new model, and that they would on that account be specially interested and would personally see to it that it gave defendant in error perfect satisfaction. It was further alleged that the plaintiffs in error for the purpose of defrauding the defendant in error and for the purpose of inducing him to purchase said automobile falsely and fraudulently represented to him said automobile to be as described, knowing defendant in error's ignorance of automobiles, his confidence in them as merchants and knowing that he would believe each and every representation made to be true and rely upon them; and for the purpose and design of selling defendant in error the car in question, made all of said representations, guaranties and warranties well knowing that they were not true. It was further alleged that said automobile was not a new car, but instead a second hand car, and was not a model 75-B, but a model 75; that it did not give satisfactory service, would not pull hills in high because of the many defects in the engine and other parts of said car; that none of the representations and warranties of the plaintiffs in error pertaining to the car were true but were untrue; that in addition to the warranties stated, the plaintiffs in error represented to defendant in error that if he purchased said car and the same should prove to be defective or fail to give satisfaction they without cost to defendant in error would try to make said car give good service and satisfaction. That the automobile was especially defective in that the cylinder group had a 'sand lap or crack' in the side and leaked water badly; that the crack had been filled with grease or other substance to prevent defendant in error from detecting said sand lap or crack; that the ignition system in the automobile was defective and would not give sufficient spark to operate the same; that the cylinder group

and ignition system was so badly defective that same could not be placed in good condition, either by the plantiff or defendant; that one of the cylinders was badly cracked, and an oversized piston had been installed, and said piston was so tight that same would not run; that the rear gear system of said automobile was defective in that it 'honed and ground,' which was caused by the gears not working properly and on account of the defective construction and improper molding of said parts rendering the rear gear system impossible of correction; that all of the defects in said automobile were known to the plaintiffs in error at the time of the sale and representations and warranties alleged by defendant in error were made by the plaintiffs in error. Defendant in error charged that after giving the automobile a thorough trial and giving the plaintiffs in error sufficient opportunity to make it satisfactory he tendered the car back to plaintiff in error in as good condition as when received and demanded the return of his money which he had paid, and the return of the note given for a part of the purchase money, but that plaintiffs in error refused to take back the car, and refused to return the consideration paid for it; that all the representations by the plaintiffs in error were falsely and fraudulently made with intent to deceive and defraud defendant in error, which in fact they did.

The defendant in error prayed for a rescission of the contract of sale, for judgment against White, Ward & Erwin for the amount of the money paid on the purchase of the automobile in the sum of $245.25 and interest; for the cancellation of the purchase money note; or in the event the Guaranty Securities Company recovered on the note, then that defendant in error have judgment over against White, Ward & Erwin for the amount of such recovery; for costs and general relief. White, Ward & Erwin denied, generally and specially, all the allegations of false representations, denied the falsity of the alleged representations that the car was a new car, and that it was a model 75-B, alleging that it was a new car and that it was in fact a model 75-B. Denied the making of the warranties and guaranties and agreement for rescission alleged by plaintiff, which warranties and guaranties and agreement were shown by plaintiff's petition and supplemental petition to have been verbally made during the negotiations of, and before the closing of the sale. They further alleged that the contract of sale was in writing, signed by Hager, as well as themselves, and that such written contract contained no terms of warranty, nor any agreement for the rescission of the sale; and attached to their amended pleading a copy of the written contract, and prayed that plaintiff take nothing by his suit. The defendant in error pleaded by supplemental petition that one of the plaintiffs in error, J. F. White, called him, defendant in error, into his office in the town of Garland and produced a contract, note

and mortgage for him to sign; that when this was done defendant in error told him that his eyes were in such a bad condition that he could not see to read the papers, but was willing to sign provided they contained the warranties and guaranties which had been agreed upon; that the plaintiff in error, White, read the papers and as read by White they appeared to contain all the warranties, guaranties and agreements previously verbally made to him and he then signed the papers, but that the papers did not in fact contain all the representations and warranties, etc.

The case was submitted to the jury upon special issues, and upon sufficient evidence to warrant their conclusions, they found that the automobile in question was, in accordance with representations of the plaintiffs in error, a model 75-B; that plaintiffs in error guaranteed or warranted said automobile to be mechanically perfect in all its parts, and was suitable for the service for which the plaintiff stated he desired said car, but that it was not mechanically perfect in all its parts and was not suitable for the service for which it was desired and bought; that the defendant in error, in the purchase of the automobile, relied upon the representations made to him by the plaintiffs in error that the automobile was mechanically perfect in all its parts and suitable for the services for which defendant in error desired the same; that plaintiffs in error guaranteed or warranted that the car would give full and complete satisfaction, and that if it did not after trial by defendant in error they would permit him to return the same to plaintiffs in error and that plaintiffs in error would give back the consideration paid therefor; that defendant in error relied upon said representations in the purchase of said automobile; that plaintiffs in error represented that the car was a new car and that it was a new car when purchased; that the defendant in error, upon the discovery of the defects in the car tendered said car back to plaintiffs in error and adhered to such tender; that said car was, when so tendered back, in as good mechanical condition as it was when defendant in error received it, ordinary wear and tear excepted; that the plaintiffs in error did not place said car in such mechanical condition as that it would give satisfactory service; that the failure of the car to give complete satisfaction was not due to lack of skill on the part of the defendant in error, his agents and servants, in operating and caring for the car; that at the time defendant in error made the cash payment on the car and executed his note for the deferred payments he had not and could not, by the use of ordinary care, have discovered the said defects of which he complains in this suit. The jury further found that the plaintiffs in error, nor either of them, did not read into or represent to the defendant in error at the time of the execution of the instruments, or either of them, that they contained the warranties and guaranties in substance as alleged by the defendant in error.

The written contract of sale is free from ambiguity, and contains no warranty or agreement for rescission.

The evidence, as it appears in the record, is sufficient to justify the conclusion that the automobile was defective substantially as charged in the petition and that defendant in error was not aware of said defects.

Judgment was rendered in favor of the Guaranty Securities Company as an innocent purchaser for value for the amount of the $450.00 note executed by the defendant in error as a part of the consideration for the purchase of the automobile, and in favor of the defendant in error against the plaintiffs in error, White, Ward & Erwin, for the amount of the cash consideration paid to them and also for the amount of the recovery had by the Guaranty Securities Company against the plaintiffs in error on the note.

The plaintiffs in error made a motion in the county court for judgment in their favor, which was overruled, and they assign as error this action of the court and the action of the court in rendering judgment in favor of the defendant in error against them and in refusing them a new trial.

The propositions contended for are: First: 'The plaintiff having failed to establish his charge of false representations of facts, by which he claimed to have been induced to buy the car; and having failed to establish his charge that by the fraudulent false reading of the contract to him he had been deceived into signing the written contract; and the contract being in writing, and appearing to be complete on its face; and the said written contract containing no such terms of warranty, nor agreement for rescission as were relied upon by plaintiff, the plaintiff was not entitled to have said contract rescinded.' Second: 'The verdict of the jury having freed the written contract of all charges of fraud—there being no charge of accident or mistake—and the said written contract appearing on its face to be complete, as the pleading of the plaintiff indicated it was intended to be, and being free from ambiguity, stands as the sole repository of the terms of the sale, and to it alone, the court must look to determine the rights of the parties.'

The judges of this court disagree upon the question or questions of law raised by the propositions asserted, and, especially since our jurisdiction is final, we deem it advisable to certify the question set out below to the Honorable Supreme Court of Texas for adjudication.

Question 1. The written contract of sale of the automobile in question being free from ambiguity and containing no terms of guarantee or warranty and no agreement or (for) rescission, was the trial court authorized under the pleadings, facts stated and findings of the jury, to render the judgment, shown in the statement to have been rendered, in favor of the defendant in error? Or does the

written contract, as contended by the plaintiffs in error, 'stand as the sole repository of the terms of the sale' and must the court look to it alone to determine the rights of the parties?

The brief of appellant, appellee having filed none, is herewith presented for the benefit of the court as more fully setting forth the issues.''

We have before us a case based upon contracts in writing, free from ambiguity, and in the execution of which by the parties thereto no fraud of any kind was practiced and no mistake or accident alleged. The jury has found that the sellers of the car did not deceive the purchaser at the time he executed the contract, and the jury further determined that the car was a *new* car and of the very model which the buyer says he bought. In all these respects, the jury found against the allegations of Hager. Under the facts above stated, we think the question certified herein is governed by the following well settled rules pronounced by the Supreme Court of Texas:

In the first place, it is elementary that in the absence of fraud, accident or mistake, oral agreements will not be permitted to contradict or vary the terms of a written instrument. See: Coverdill v. Seymour, 94 Texas, 1, 57 S. W., 37; Harper v. Lott, Town & Improvement Co., 228 S. W., (Com. Apps.), 188; Martin v. Hemphill, 237 S. W. (Com. Apps.), 550, 20 A. L. R., 984; Eldora Oil Co., v. Thompson, 244 S. W., (Com. Apps.), 505. The last three opinions cited were by this Section of the Commission of Appeals, and we collated and reviewed many Supreme Court authorities, discussing various phases of this rule, in the case of Harper v. Improvement Company, *supra*.

In the second place, Justice Stayton, in the case of Bigham v. Bigham, 57 Texas 238, gives us another general rule in the following words:—

''The general rule is nowhere more clearly stated than by Mr. Greenleaf in his work on evidence. 'Where parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous *colloquium* between the parties, or of conversions or declarations at the time when it was completed, or afterwards as it would tend, in many instances, to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected. 1 Greenl., 275.' ''

The rule just quoted has never been questioned, but followed without exception. We have referred to many such authorities in the

three opinions of the Commission of Appeals first hereinbefore cited. For other cases and authorities, see: Gonzales College v. McHugh, 39 Texas, 348; Union Central Life Ins. Co. v. Chowning 8 Texas Civ. App.,455, 28 S. W., 119; Kansas City Packing Box Co. v. Spies, 109 S. W., 435; Case Co. v. Hall, 32 Texas Civil App., 214, 73 S. W., 836; Traylor v. Evertson, 26 S. W., 637, citing Benjamin on Sales, sec. 621; E. Van Winkle & Co. v. Canty Crowell, 146 U. S., 42, 36 Law Ed. 880; Century Electric Co. v. Detroit Copper Co., 264 Fed., 49; 23 Ruling Case Law, p. 1399, Sec. 224; 2 Wharton, Cont. Sec. 665; 4 Am. & Eng. Ency. L. (2nd ed.), p. 568.

As we understand the facts and statements in the certificate, the contracts in question, on their face, constitute a complete contract, in ordinary form, covering definite sale of an automobile, the purchaser definitely and unconditionally buying the same and giving definite and binding notes, secured by mortgage, for deferred payments. In other words, we conclude, from the certificate, that the written contract imports a legal obligation with no uncertainty as to its object or the extent of such engagement. Also, that the contracts were deliberately and willingly entered into. If we have correctly interpreted the certificate in this case, then the aforesaid rule announced by Justice Stayton applies, and it will be conclusively presumed that the whole engagement of the parties was reduced to writing. Therefore, we think, under those circumstances, that the written contract stands as the sole repository of the terms of this sale and that the court should look to it alone in determining the rights of the parties.

But, we do not have the contract, in haec verba, before us, and, as the Court of Civil Appeals still has the case in hand, that court can apply the rules which we shall here discuss to the very facts disclosed by the written contracts.

We are not unmindful of another rule which our Supreme Court announces in the case of Coverdill v. Seymour, *supra*. In that case Judge Williams, after stating the rule that parol evidence will not be permitted "to vary, contradict or add to the written contract of parties," goes on to say:—

"It is sometimes the case that the writing represents only a part of the contract, the other parts being expressed orally, and in such cases, these parts not reduced to writing, which are consistent with the writing, may be shown."

As we have already stated, we think the contract in this suit, according to the certificate, was a complete contract, covering the sale of an automobile, and it seems that Hager pleaded that the written contracts were intended to cover the entire agreements of the parties. Therefore, we do not think this last rule quoted could possibly have application to the contracts in suit, in any event. But, even if it could have application, the rule would not avail Hager anything,

for the alleged parol warranties and right of rescission could not be permitted to vary or contradict the terms which were actually included within the written contracts. For, such parol agreements would clearly be *inconsistent* with the written provisions we have here. The law does not permit that result.

Hager undertook to obtain his relief in this case upon the basis of being the victim of fraud. All of this testimony was admissible upon that issue. But, when the jury found that, at the time of the execution of the written contracts, no fraud was practiced, we think the written contracts must stand. But, the county court found that the car did not measure up to the oral warranties, and, therefore, Hager could exercise an alleged oral agreement from the sellers, allowing the purchaser to rescind. The written contracts contained no warranties and no agreement for rescission. The contracts seem to provide a *definite* sale upon the one hand, and a like purchase upon the other, of an automobile. It needs no argument to show that the right of rescission not only added to, but varies the definite sale. Hager gave unconditional notes. The right of rescission makes them conditionally payable. This right of rescission would absolutely nullify the written contracts, and an oral agreement for such a rescission will not avail to that end.

In connection with the power of an oral right of rescission to nullify a definite contract in writing, Justice Stayton, in case of Bigham v. Bigham, *supra,* approves holdings of other courts that the written contracts must stand. One case he refers to is where the Massachusetts court held that an alleged oral agreement to permit the wife to rescind a definite written contract she had executed, in event her husband, who had not already been consulted, should later object to it, could not be enforced to permit such rescission. Another case referred to by Justice Stayton was where a party attempted to nullify and rescind an absolute note given for the purchase of a horse. The purchaser claimed that the seller gave him an oral right to return the horse later, and rescind the contract if the horse did not prove to be satisfactory. The court held that the absolute note must stand.

The case of McCormick v. Kampmann, 102 Texas, 215, 115 S. W., 24, was a suit upon notes given for the purchase of an undertaking business. Chief Justice Gaines wrote the opinion in this case, from which we quote the following:—

"The plaintiff showed a written contract between McCormick and Carter & Mullaly for the sale of the latter's undertaking business, which specified distinctly that the notes were to be given for the sale of that business and for certain personal property, including hearses, etc., upon which a lien was retained for the payment thereof, and there was testimony tending to show that there was no other con-

sideration whatever. But the defendant claimed and testified that in addition to the written contract, which is complete in itself, there was an oral agreement at the time of the transaction that Carter & Mullaly were to perform certain services for McCormick in the way of keeping the hearses, etc., that were sold and of furnishing horses, hacks, for funeral occasions as the defendant might demand, and that this was not done. It now seems to us that the terms of the contract having been set out in writing and signed by both parties. the testimony tended to show a change in the writing and to add thereto other stipulations on the part of Carter & Mullaly, and. was therefore not admissible.''

It is clear to us that this oral right of rescission can not avail to overturn these written contracts.

Hager also alleged certain warranties as to the mechanical efficiency of the car and what it would do. But, Hager later willingly signed a contract in writing without requiring that such written contract contain said warranties. Having accepted the written contract without demanding the inclusion of these warranties therein, the purchaser cannot now vary such a contract with such prior parol warranties discussed in previous negotiations.

In the case of Traylor v. Evertson, 26 S. W., 637, Chief Justice Garrett, of the Court of Civil Appeals at Galveston, says:—

''Traylor brought this suit against Evertson to recover damages for the sale to the plaintiff, by the defendant, of an unsound horse, putting his right to recover upon two grounds or counts,—deceit and breach of warranty of soundness. There was evidence to sustain the verdict of the jury in favor of plaintiff on the ground of deceit. Benj. Sales, sec. 461a. But the parol evidence of the contents of the bill of sale, which was not produced on the trial, seems to show that it contains no warranty of soundness. Where the written sale contains no warranty, parol evidence is inadmissible to prove the existence thereof. Benj. Sales, Sec. 621.''

In connection with parol warranties, as affecting written contracts, we quote as follows from the case of Lynch v. Ortlieb, 70 Texas, 727, 8 S. W., 515:—

''Appellant, J. D. Lynch, owned a two-story business house in the city of Dallas, and on the 30th day of January, 1880, entered into a written lease for the second story of the building to appellees for a term of two years, beginning February 20, 1880. Appellees paid rent up to April 1, 1880, and went into possession of the leased premises and began business as wholesale dealers in notions. The written contract of lease contains no covenant, or representations, as to the safety or condition of the building. On April 1, 1880, a portion of the wall of the lower story of the building fell, causing damage to appellees' goods. This action was brought against the

landlord, Lynch, to recover compensation for the damage thus sustained.

"On the trial appellees were permitted, over objection of appellant, to testify that Hardie, agent for Lynch, who made the contract of lease with them, represented to them, at the time that lease was executed, that the building was safe and secure. The objection was upon the ground that appellees 'sought by the evidence to vary and enlarge the written contract of lease by adding a parol covenant of warranty as to the condition and character of the building.'

"The contract having been reduced to writing and executed by the parties, they are presumed to have stated in the writing just what each party undertook to do, and their respective rights and liabilities must be determined from the language of the instrument itself. If the language of the instrument was ambiguous or uncertain, parol evidence might have been offered for the purpose of explaining what the language used actually meant. The instrument contains no warranty as to the condition or character of the building, and the effect of the evidence was to fix upon appellant the liability arising upon such a warranty, thus changing in a very material manner the rights and liability of the parties. The only covenant contained in the lease is upon the part of appellees, that they would keep the premises in repair."

Consequently, we do not think these prior parol warranties can avail to vary the written contracts containing no such warranties.

Under definite rules of our Supreme Court of long standing, as set out by us herein, and under the facts and pleadings in this case, as found by the jury, we think the county court erred in basing its judgment on the oral warranties and thereby enforcing an oral agreement which granted the purchaser the right of rescission. After all, this is but another illustration of those cases where a party, upon entering into a formal written contract, fails to exercise ordinary care to see that the contract he is about to sign includes his views of the prior agreements. In such a conflict between the written and unwritten contracts, in the absence of fraud, accident or mistake, the written must prevail. The purchaser here, if he has sustained any loss, has done so as a direct result of his own negligence. Against such a loss, the law cannot protect him, for it has always been true that "the law rewards the diligent and not those who sleep on their rights." When men execute written contracts they must see to it that their contractual rights are included therein.

The parties here having reduced their agreements to writing in a formal contract, it is absolutely clear to us that these prior conversations, in the nature of express warranties, orally given, cannot be considered for the reason that they would vary the written contract. The relief sought by Hager was one of complete rescission, based upon an alleged breach of these prior express oral

promises. We hold that said warranties could not be considered. In addition to other authorities, we cite Seitz v. Machine Company, 141 U. S., 510, 35 L. Ed., 837, and Cameron Steam Pump Works v. Lubbock Light & Ice Company, 167 S. W., 256.

Stripping this sale of all prior oral warranties, we are reduced to the question as to whether or not the *law* would *imply* any warranties. We realize that, under certain conditions, even in the absence of express warranties of any kind, the law will imply certain warranties, such as that a machine will do the work which it is ordinarily intended to do. See: Seitz v. Machine Co., *supra.* And, in the case at bar, considering the written contracts only, Hager might have recovered damages equal to the amount required to cure the defects in his car which were present at the time of the purchase and which he later discovered while retaining and using the car. It seems to us, that such relief, under the circumstances of this case, would have been the extent of the relief which he could possibly have obtained. But, we do not pass upon this question, for no such relief seems to have been sought. As aforesaid, the suit was solely one for complete rescission of the contract. We prefer to say, however, that we are inclined to think that if a party buys an automobile, relying upon the dealer's judgment, he would at least be entitled to an automobile that would run and perform its usual and ordinary functions. And, if it did not measure up to that standard, the seller should pay the expense of curing its defects and making the machine function, even though the contracts were silent as to warranties.

We do not mean to hold that the same strict rules against parol warranties affecting written instruments apply to incomplete and informal *"bills of parcels"* and mere receipts for the price containing no allusion to a warranty, nor a so-called *"bought note"* signed only by the buyer. See: Bennett's 7th ed. of Benj. on Sales, pp. 666-667.

We remember also that, while the doctrine of caveat emptor applies in Texas as a general rule, still the Supreme Court in the case of Brantley v. Thomas, 22 Texas, 271, modified it to the extent of holding that when a merchant orders upon inspection of a sample, there is an implied warranty that the goods, when delivered, will measure up to the sample. In the same case, the court holds that if one orders things from a distance, without opportunity for inspection, the law will imply a warranty that the goods sent are such as were ordered. In other words, the cardinal principle of the rule of caveat emptor seems to be that the party has an opportunity to inspect the thing bought. The decision in Brantley v. Thomas, *supra,* is clearly correct, in our opinion.

Therefore, under the pleadings and relevant and material facts in this case, as presented by the certificate quoted, we think the

certified question should be answered to the effect that, in entering judgment in this case, the trial court should have considered the written contracts only, and that they stood "as the sole repository of the terms of the sale." We recommend such an answer.

On the other hand, if the terms of the written contracts and pleadings are not actually in accord with our interpretation of the certificate, the Court of Civil Appeals will have no difficulty in applying the rules of law discussed herein to the exact verbiage of the written contracts and pleadings.

## BY THE SUPREME COURT.

The opinion of the Commission of Appeals answering certified questions adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.