## LONE STAR OLDS CADILLAC CO. v. VINSON.

### No. 13298.

Court of Civil Appeals of Texas. Dallas.
Dec. 24, 1942.

Rehearing Denied Feb. 19, 1943.

Irion & Cain, of Dallas, for appellant.

Albert S. Reagan, of Dallas, for appellee.

LOONEY, Justice.

Earl F. Vinson sued the Lone Star Olds Cadillac Company to recover damages for the alleged breach of warranty in regard to the mechanical condition of a used car, purchased by plaintiff from the defendant. Plaintiff recovered below, from which the defendant appealed and, on original submission, we reversed the judgment below and rendered judgment for the defendant. On rehearing, the majority has reached the conclusion that error was committed in reversing and rendering, but rather that, the judgment below should have been affirmed.

In October, 1940, plaintiff purchased from the defendant a used 1939 model automobile, the price being $689.82 (being the reasonable market value of such make

and model in good mechanical condition). The plaintiff was allowed a credit of $195 for a used car put in on the trade, and executed an installment negotiable note for $494.82 for the balance; but prior to the institution of suit, the note in question was transferred to General Motors Acceptance Corporation, an innocent purchaser.

Plaintiff alleged that the defendant, acting through an agent conducting the sale, expressly warranted orally that the automobile was in good mechanical condition and would operate efficiently; that plaintiff relied upon such warranty, but for which, he would not have made the purchase; that the car was inefficient, defective, and not in good mechanical condition as warranted, resulting in plaintiff's suffering the damages, for recovery of which the suit was instituted. Defendant denied that any of its agents had orally warranted the Oldsmobile car purchased by plaintiff, as alleged by him; but alleged that all terms and conditions of the sale are contained in a written sale contract signed by the parties, reciting, among other things, that no warranties, express or implied, representations, promises or statements have been made to plaintiff, unless endorsed on the contract in writing, and that no such warranties alleged by the plaintiff were ever endorsed upon the sale contract. In a supplemental petition, plaintiff admitted that he signed the sale contract, as alleged by the defendant, but was induced to do so through fraud and fraudulent representations of defendant's agent, in this, that after the oral warranties, regarding the condition of the car, were made, defendant's agent presented plaintiff with the written instrument in question, requested him to sign same, stating that it was not necessary that he read the instrument, that it was simply a paper the Loan Company wanted signed; that it contained nothing varying their oral agreement theretofore made concerning the guaranty on the car; that defendant's said agent knew plaintiff was unversed in and ignorant of the tenor and purport of the legal phraseology of the document; that plaintiff signed the written instrument, relying upon said representations, but for which, he would not have done so.

The statement above reflects the status of the pleadings on the pivotal issue involved in the case when trial was had. In response to issues properly submitted (after the court overruled defendant's motion for an instructed verdict), the jury found that, prior to the time plaintiff signed the sale contract, defendant's agent conducting the sale warranted the car to be in good mechanical condition; represented, at the time the contract was signed, that it was not necessary for plaintiff to read same, as it contained nothing altering or varying the oral agreement warranting the car to be in good mechanical condition; and that plaintiff relied upon said representation when he signed the contract. The jury also found that, at the time of the sale, the car was not in good mechanical condition and that $300 was its reasonable cash market value at the time. Defendant's motion to set aside the verdict and for a new trial being overruled, this appeal was perfected.

The propositions urged by the defendant for reversal are, first, that the court erred in predicating judgment upon an oral warranty in conflict with the terms of the written sale contract and purchase order, without any evidence of fraud vitiating the written contract; the second proposition urged is dual in nature, to the effect that, the court erred in submitting Issue No. 1, inquiring whether or not defendant's agent warranted the car as alleged, without defining the term "warranted"; also erred in refusing defendant's Issue No. 9, asking the jury to find whether or not the alleged representation of defendant's agent as to the condition of the car, was merely his opinion; and, third, that the court erred in rendering judgment for the plaintiff, based on a breach of warranty, in that, plaintiff neither alleged nor proved ground for rescission; the contention seemingly being that plaintiff would first have to allege and prove ground for rescission before being permitted to recover for breach of warranty.

Mr. Whittaker, defendant's agent who dealt with plaintiff, admitted that he told him the car was in good condition, all right, and that if not all right, defendant would make it so. Referring to the purchase order signed by plaintiff, containing (stamped upon it) the following language: "50–50 guarantee for 30 days in our own shop," witness was asked: "Q. Is that the only guarantee you give on all your cars or do you have others? A. No, that is the only guarantee unless it is just a verbal guarantee to keep a customer satisfied, like I made him." Mrs. Vinson, present during

the negotiations between her husband and Mr. Whittaker, testifying, was asked:

"Q. Was there a conversation between your husband, Whittaker and Dyson? A. Mr. Whittaker said it (the car) was in good shape, and they would guarantee it to be in perfect running condition, and all, you know, mechanical condition. He said it was in perfect shape, and that if it was not, he would make it good.

"Q. He guaranteed it as being—? A. Yes, in perfect running condition, mechanically, in every way." Testifying in his own behalf, plaintiff was asked:

"Q. Mr. Whittaker did not attempt to tell you what was in every one of these written agreements, did he? A. No, Sir, he said there was no need to bother with it. That it was just routine, and I figured that they were a big firm and reliable and would do the right thing—at first, I did—he said it was just a matter of routine, nothing there to hurt me, nothing against me, and I signed them."; also testified that, before signing the sale contract, he did not drive the car or hear the motor, because Whittaker said it was useless, that they were behind it, and guaranteed it to be in first-class mechanical shape and that if there was anything wrong about it, they would make it good. At another place in his testimony, plaintiff was asked:

"Q. Did you read the papers you signed? A. No sir.

"Q. Why did you not read them? A. He said it was unnecessary; there was a lot of writing and printing on them, and I made the remark that if everything was all right, there was no use reading them; it would take a Philadelphia lawyer to understand them anyway. * * *

"Q. Is that the reason you did not—because he said there was no use to read them? A. Yes.

"Q. Did you know anything—did you know there was anything in any paper you signed which said that the car was not guaranteed? A. No sir, I did not notice any.

"Q. Did you know there was anything in one of those papers you signed to the effect that there were no warranties or guaranties other than what was set forth in them? A. No sir.

"Q. If you had known it, would you have signed them? A. No sir, I would not."

That the car was not in good mechanical condition at the time plaintiff made the purchase, as verbally guaranteed by Mr. Whittaker, was abundantly established by the evidence. It was shown that the car had to be taken back to the defendant for repairs within two or three days after the sale, and within the first two months, was returned at least 12 times; and during that period, was also taken to other garages for repairs; it was also shown that, attributable to its defective condition, the car consumed an undue amount of oil and gas, and generally gave unsatisfactory service. Neither the value of the car at the time of sale, as found by the jury, nor the amount for which judgment was rendered, is called in question.

In view of the testimony set out somewhat at length, we do not think it can correctly be insisted that the verdict was not authorized by evidence, or that the judgment rendered did not follow logically the findings of the jury. The applicable doctrine, we think, was announced in Bankers' Trust Co. v. Calhoun, Tex.Civ.App., 209 S. W. 826, writ refused, opinion by Chief Justice Rainey, who said: "The rule that parol evidence is inadmissible to vary the terms of a written contract does not prevent the use of extrinsic evidence to attack its validity by showing fraud in its inception, notwithstanding the written contract provides that 'no conditions, representations, or agreements other than these' contained therein could be considered." Syllabi 4. The rule that a person who signs a written instrument without reading it, when he has the ability and opportunity to do so, cannot afterwards complain that he did not know its contents, has no application where the signature of the party signing is obtained without his reading it, by reason of any actual fraud, artifice or representation upon which the party signing has a right to rely, and does rely, as in the instant case. Bell v. Gaines, Tex.Civ.App., 237 S.W. 346, and authorities there cited.

The defendant relies, among others, on Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47, 48, as an authority. We do not think that case is in point, in that, the parol evidence rule invoked in the instant case was not involved. This is perfectly apparent from the language of Judge Hickman, who said: "There are no allegations whatever on the part of plaintiffs, nor proof, to the effect that by reason of fraud, accident or mistake the written contract contained anything not agreed to by the parties, or that any promise, representation or war-

676

ranty was omitted therefrom. Nor is there any allegation or proof that by any fraudulent representation, artifice, or conduct the parties were induced to sign the contract, or that at the time it was signed they did not know or were prevented from knowing what it contained. Under these circumstances, it is plain that defendant was not bound by any promise or representation made by Nordyke and Hamm, not contained in the written contract. J. I. Case Threshing Mach. Co. v. Manes, Tex.Com.App., 254 S.W. 929; Bybee v. Embree-McLean Carriage Co., Tex. Civ.App., 135 S.W. (203), 205." The language just quoted indirectly supports plaintiff's contention.

▮▮▮▮ The defendant cannot complain of the failure of the court to define the term "warranted," employed in Special Issue No. 1, because no request therefor was made, as contemplated by Rules 273 and 279, Texas Rules of Civil Procedure; nor do we think the court erred in refusing defendant's requested Issue No. 9, in that, there was no evidence supporting the theory that defendant's guaranty in regard to the good condition of the car was merely the expression of the opinion of defendant's representative; on the contrary, what was said was an unequivocal statement of fact in regard to the then condition of the car.

▮▮▮▮ Defendant's third proposition seemingly is that, before plaintiff could recover damages for breach of warranty, he was required to seek and obtain a rescission of the sale contract. To this proposition, we cannot agree. Where, as in the instant case, the buyer claims that the sale was induced by the seller's fraud or artifice, and that the commodity sold did not come up to the warranty given, the buyer has the choice of remedies; that is, may rescind the contract entirely, or affirm, and seek damages for breach of warranty; but cannot pursue both. See 37 T.J., p. 514, § 235. However, in the instant case, plaintiff was precluded from rescinding, because, before the institution of suit, the negotiable note given for the unpaid purchase money had passed into the ownership of an innocent purchaser. See 37 T.J., pp. 516, 517, § 236; also, Texas & N. O. Ry. Co. v. Thompson, Tex. Com.App., 12 S.W.2d 963.

For the reasons stated, we think the Court erred in reversing and rendering judgment for the defendant, therefore, plaintiff's motion for rehearing is sustained; the former judgment of this Court is set aside and judgment is now rendered for the plaintiff, affirming the judgment of the court below.

Affirmed.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting).

I adhere to the holding in the original opinion, in which all members concurred after a careful review of the record. I see no reason now to reverse our conclusion. Our Supreme Court has spoken, not once but twice, in reversing the majority on the question here presented. Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47; Super-Cold Southwest Co. v. A. Z. Elkins, Tex.Sup., 166 S.W.2d 97, decided Nov. 25, 1942, not yet reported [in State reports]. The holding in the above cited cases is decisive of the question here. Hence, I content myself to follow the Supreme Court in holding that parol evidence of false representations is inadmissible where written contract provides to the contrary.

Where the written contract, as here, provides that no prior representations shall be binding unless endorsed on the contract, all prior warranties and representations of seller's agent not so endorsed are waived. As held by Judge Hickman in Patton, supra, quoting from the opinion of this Court in the same case (83 S.W.2d 782):

"'In the case of a valid contract, all prior negotiations that the parties may have had, previous to the execution of the contract, must be considered as either waived or as merged into the written contract. By a valid and enforceable contract is meant such a contract that is neither void on its face, nor voidable because of fraud inducing its execution. In a suit to enforce such a contract, neither party can go behind its terms, to ingraft on it other terms not specifically, or by clear implication, contained therein; for there is a rule of law, as old as our jurisprudence, that extrinsic evidence cannot be received to vary the terms of a valid contract.'" [130 Tex. 449, 110 S.W.2d 48.]

Then Judge Hickman says, as may well be said here: "The pleadings in this case and the findings by the jury were not of such acts of fraud, but were of oral representations which conflict with the terms of the written contract. These representations were specifically negatived by the writing, and, if by denominating them fraud the written contract may be set

aside, then a written contract is of no higher dignity than an oral one. The rule forbidding the varying of a written contract by parol would become a dead letter if prior oral agreements were permitted to govern the parties rather than subsequent written agreements on the same subject matter. Attaching the label of fraud to the oral representations does not change their character."

In the Patton case, the alleged cause of action is very similar to the alleged facts in this case. Quoting from the opinion: "The representations found by the jury to have been made by the agent of the machinery company to Patton were: (1) The caterpillar could be operated with little expense; (2) by an inexperienced operator; (3) in muddy ground; (4) it was reasonably fit for the purpose for which it was purchased; (5) all of its parts that were apt to give trouble were new; and (6) defendant in error could pay for it out of money which he could earn with it. In answer to other special issues submitted in connection with the above, the jury found that each of said representations were untrue and that Patton was induced to execute the contract and notes because he believed each to be true."

So near in the instant case do the allegations of fraud follow the Patton case, I am pleased to quote literally from plaintiff's petition: "Immediately before and at the time said automobile was purchased defendant expressly warranted orally that same was suitable for the purpose for which it was purchased, namely as a family and business car, and that it was in good mechanical condition and would operate efficiently, and plaintiff relied upon said representation and warranty in purchasing said automobile, and but for such representations and warranty he would not have purchased same. Said warranty and representations both made to plaintiff by Harry Whitaker and J. J. Dyson, for and on behalf of defendant, each of whom were then and there the duly authorized employees and agents of defendant and acting within the scope of their employment in making of said warranty."

Then in supplemental petition, designated as plaintiff's answer to defendant's answer, plaintiff alleges: "Defendant's allegations contained in paragraph seven of said answer regarding the allegations or statements in defendant's exhibit 'A' attached to their said answer, are true insofar as it is alleged that plaintiff signed such an instrument, but plaintiff says that he was induced to execute said instrument through the fraud and fraudulent representations of defendant and of defendant's agent in this: that after the guarantee and warranty, as alleged in plaintiff's original petition regarding the condition of said car had been made, defendant's agent, Harry Whitaker, presented plaintiff with the instrument in question and told him to execute same; he further told him that it was not necessary for him to read it, as it was only a paper which the loan company wanted signed; that it contained nothing altering or varying their oral agreement theretofore made concerning the guarantee of said car."

It will be observed that plaintiff declares upon a verbal contract, subsequently reduced to writing. The alleged verbal contract contains covenants of warranty; the written contract (Exhibit "A" to defendant's answer) contains none. The written contract expressly provides that "No warranties, express or implied, representations, promises or statements have been made by seller, unless endorsed hereon in writing." The inducing fraud alleged to set aside this written contract—that defendant's agent told plaintiff "it was not necessary for him to read it as it was only a paper which the loan company wanted signed; that it contained nothing altering or varying their oral agreement theretofore made concerning the guarantee of said car,"—is not actionable fraud relative to the alleged covenants of oral warranties that the automobile "was suitable for the purpose for which it was purchased, namely as a family and business car and that it was in good mechanical condition and would operate efficiently."

Manifestly, the oral warranty alleged must be determined as was intended by the parties. The subject of the contract was a secondhand automobile which, indisputably, had been run 42,000 miles and was in the defendant's garage undergoing repairs at the time plaintiff purchased it. The plaintiff made no inquiry as to its past service or the party or parties owning or using it. It was purchased, as plaintiff alleged, with the warranty that it was "suitable" as a family and business car and in good mechanical condition, and would operate efficiently for the purpose for which it was purchased. Plaintiff knew

the kind of car he was purchasing; he had purchased and used several other secondhand automobiles, and, if the warranty was made as alleged, such warranty could have no application other than the warranty of a much-used secondhand automobile, such as he was purchasing. Plaintiff testified, quoting from his testimony:

"Q. And Mr. Whitaker and Mr. Dyson interested you in an automobile? A. Mr. Whitaker.

"Q. And you went back and took a look at this automobile? A. Yes.

"Q. He told you, as I understand your testimony, that if it wasn't in good condition, that he would put it in good condition—right? A. Yes, sir.

"Q. And the car was back in the paint shop at that time? A. Yes.

"Q. Did you see the car yourself? A. Yes."

Evidently, the alleged warranties were intended to be limited to the mechanical condition and efficiency of a secondhand automobile, and not the condition and efficiency of a new automobile. It is well known to the public generally that a secondhand automobile that has been run 42,000 miles will not give the efficiency and be in as good mechanical condition as a new automobile of the same make. Thus, the alleged warranties should have been limited in the court's charge to a secondhand automobile.

In the charge to the jury, the issue was submitted: "Special Issue No. 1. Do you find from a preponderance of the evidence that Whitaker warranted the car in question to be in good mechanical condition prior to the time the contract was signed?" To which, the jury answered "Yes." The defendant, in due time, excepted to the charge because the court did not define the word "warranted," and, on motion for new trial, assigned error to the court's action in refusing to define the term, and approximately presents the point in his brief. The term "warranty" or "warranted" may well have been defined to avoid a jury's verdict in giving its application to mechanical condition and efficiency of a new automobile.

However, this appeal should not be decided on whimsical procedural errors; fundamental error is apparent. The alleged "fraud" and "fraudulent representations" to set aside a written contract must be real, not fantasia—a potpourri of familiar airs floridly set with interludes and embellishments. "Fraud" is not such a magic word, by which the right or interest of another is injured, when otherwise no harm is done. Now, what does the plaintiff claim is fraud to set aside the written contract? Let's analyze. He alleges, and it will be assumed for the purpose here, that Mr. Whittaker (defendant's agent) "told him to sign the written contract, that it was not necessary to read it as it was only a paper which the loan company wanted signed." Can it reasonably be contended that such allegation is fraud, to induce the signing of a contract? Certainly not. There is nothing false about the statement; no testimony is offered that it was false. Thus, we will assume that the facts related are true. At any rate, plaintiff testified that he did not understand the written contract, and would not have understood it if he had read it; that only a "Philadelphia lawyer" could understand it; and, reviewing the record, the aftermath events show the wise business acumen of the loan company in requiring all warranties to be endorsed on the written contract to avoid just what is happening in this case. Coming, then, to the other so-called "inducing fraud," that Mr. Whitaker told plaintiff that the contract "contained nothing altering or varying their oral agreement theretofore made concerning the guarantee of said car," indeed it will be seen that the written contract does not "alter or vary" the oral agreement. There is no agreement, alleged or proved, that any warranty of the car was ever to be incorporated in or endorsed on the written contract; or that the defendant inadvertently, fraudulently, or otherwise, failed to include the alleged warranties. The written contract is plain and unambiguous, expressly limiting the company's liability "for warranties of the seller," when endorsed thereon and not otherwise. It recites that "No warranties, express or implied, representations, promises or statements have been made by the seller unless endorsed hereon in writing." The endorsement of warranties became the binding force between the contracting parties. Such endorsed warranties, and no others, created liability. Therefore, the alleged warranties having been made previous to the execution of the written contract, and not having been endorsed on or merged in the contract, must be considered as waived. The warranties not

being endorsed or merged, it cannot be said that the failure, in the absence of pleadings and proof, is fraud.

The contracting parties had the right to make their own contract; they did so. Plaintiff had the right to waive the warranties and agree that only such warranties as shall be endorsed on the written contract are binding on the company. He did that. The written contract would have been just as effective against the alleged prior warranties, had it not contained the above clause, limiting defendant's liability to endorsed warranties. The contract evinces limitation only, and in no way alters or varies the alleged oral agreements previously made. Deleting the clause, plaintiff would not be entitled to engraft on the written contract the alleged oral warranties by extrinsic evidence.

It is a settled rule of law that a party desiring to show that a written contract did not embrace the entire agreement of the parties must allege that the covenant or covenants not embraced were omitted through fraud, accident or mistake. Janes v. Ferd Heim Brewing Co., Tex.Civ.App., 44 S.W. 896, 897, writ refused. In the cited case, Janes offered to prove that the written contract did not embrace the entire terms of the contract between himself and the plaintiff. This Court, speaking through Judge Bookhout, said:

"If the defendants desired to show that the written contract did not embrace the entire terms of the contract between plaintiff and W. T. Janes, they should have alleged in their pleadings that fact, and further alleged that it was omitted either through fraud, accident, or mistake ([East Line & R.] R. R. Co. v. Garrett, 52 Tex. [133], 138); and the evidence must have supported this allegation. The evidence offered, of W. T. Janes, did not show any reason why the facts were not embraced in the written contract. The evidence offered tended to vary the terms of the written contract, and therefore was inadmissible." (Citing authorities)

So, in the case at bar, there is no conflict in the written contract with the verbal agreements sought to be engrafted onto it. The contract is silent as to the warranties alleged, and there is no allegation or proof to show why the warranties were not embraced in the written contract. There is no allegation of fraud sufficient to materially change or wholly defeat the written contract by engrafting warranties by parol. The defendant obligated himself to be bound by warranties and representations endorsed on the written contract, and none other.

In the very recent case of Super-Cold Southwest Co. v. Elkins, Tex.Sup., 166 S. W.2d 97 (not yet reported [in State reports]), the contract there provided, as does this one, in effect, that "No agreement except what is embodied herein shall be binding upon the parties hereto and it is declared that this contract and the above mentioned promissory note contains all agreements, representations, covenants and warranties, express or implied, relative to the operation and sale of said property, and the price thereof and the payment therefor." Elkins sought to engraft onto the contract warranties of efficiency made prior to and at the time the contract was entered into by the parties. There were no allegations, or proof of fraud—as in this case, there were no sufficient allegations and proof of fraud; our Supreme Court, speaking through Chief Justice Alexander, approving the holding in Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47, said: "In that case [Patton case] this Court held that proof of oral representations and warranties made prior to the execution of the written contract, and not embodied therein, was inadmissible. This is necessarily the law, for otherwise a party could destroy the value of a written contract by the mere proof of contemporaneous parol agreements. The very purpose of putting the agreement in writing is to definitely settle its terms and to exclude all oral understandings to the contrary. The alleged oral warranty that the refrigerator would work satisfactorily, and that if it did not the vendor would rescind the contract, is in direct conflict with the written instrument, wherein it was provided that there were no warranties, either express or implied, other than those set out in the written instrument. The holding of this Court in the above-cited case is decisive of the question herein presented. See, also, Avery Co. of Texas v. Harrison Co., Tex.Com. App., 267 S.W. 254; Wright v. Couch, Tex.Civ.App., 54 S.W.2d 207; Willis v. Adams, Tex.Civ.App., 138 S.W.2d 855."

In the case at bar, as in the above cited case, there were no allegations or proof that the written contract contained statements that were false, and known to be false, by defendant's agent at the time the

contract was executed; or that the contract was made to deceive or defraud the plaintiff, or that any promise, representation or warranty was omitted from the contract to defraud plaintiff. Nor is there any allegation or proof that by any fraudulent representation, artifice, or conduct, the plaintiff was induced to sign the contract, or that at the time it was signed, plaintiff did not know or was prevented from knowing what it contained. Under these circumstances, the defendant was not bound by any warranty not contained in the written contract and not endorsed thereon. Clearly, if made, they were waived. The mere fact that defendant did not read the contract when he had an opportunity to do so, is no excuse to avoid its binding force. He testified that he would not have understood it if he had read it. Then, clearly, he was not induced to sign the contract by what defendant's agent said—"that it was not necessary for him to read it," and the contract being silent as to warranties, does not "alter or vary," as alleged by plaintiff, the oral contract, without some reason alleged and proven that the written contract should have contained the warranties, or that they were omitted therefrom by fraud, accident or mistake.

In the case of Avery Co. of Texas v. Harrison Co., Tex.Com.App., 267 S.W. 254, 256, Judge German, speaking for the Supreme Court Commission of Appeals, on the record there, said: "There are no allegations whatever on the part of plaintiffs, nor proof, to the effect that by reason of fraud, accident or mistake the written contract contained anything not agreed to by the parties, or that any promise, representation or warranty was omitted therefrom. Nor is there any allegation or proof that by any fraudulent representation, artifice, or conduct the parties were induced to sign the contract, or that at the time it was signed they did not know or were prevented from knowing what it contained. Under these circumstances it is plain that defendant was not bound by any promise or representation made by Nordyke and Hamm, not contained in the written contract. J. I. Case Threshing Mach. Co. v. Manes, Tex.Com.App., 254 S.W. 929; Bybee v. Embree-McLean Carriage Co., Tex.Civ.App., 135 S.W. [203], 205. In the absence of allegations of fraud, accident or mistake of the nature above indicated, it will be conclusively presumed that the written contract contained the whole agreement of the parties, and parol evidence of representations, statements or warranties not disclosed by the contract was inadmissible. White [Ward & Erwin] v. Hager, [112 Tex. 516], 248 S.W. 319; Case Threshing Mach. Co. v. Hall, 32 Tex. Civ.App. 214, 73 S.W. 835; First National Bank of Garner v. Smith, Tex.Civ.App., 183 S.W. 862."

See, also, Browning-Ferris Mach. Co. v. Thomson, Tex.Civ.App., 58 S.W.2d 183; Chatham v. Jones, 69 Tex. 744, 7 S.W. 600; Bolt v. State Savings Bank, Tex.Civ. App., 179 S.W. 1119; Colt Co. v. Kelly, Tex.Civ.App., 270 S.W. 942.

So, in the instant case, it is apparent from plaintiffs' petition, that his suit is based entirely upon breach of parol warranties made by defendant's agent, and not on breach of warranties contained in the written contract, or on warranties omitted by fraud, accident or mistake that should have been embraced therein. Under such circumstances, such oral warranties were waived, or abandoned, under all controlling authorities of this state.

Aside from the written contract mentioned, plaintiff executed and defendant accepted another instrument, a sale-order, separate and distinct from the first, affecting the sale and purchase of the automobile in question (Defendant's Exhibit 2, Tr. p. 124); to which there is no allegation or proof of fraud leveled. This sale-order recites:

"I have read the matter on the back hereof and agree to it as a part of this order the same as if it were printed above my signature. The front and back hereof comprise the entire agreement affecting this order and no other agreement or understanding of any nature concerning same has been made or entered into. I hereby acknowledge receipt of a copy of this order. * * * Conditions: * * * (7) It is expressly agreed that there are no warranties, express or implied, made by either the dealer or the manufacturer on the Oldsmobile motor vehicle, chassis or parts furnished hereunder except as follows: (stamped in red) 50-50 guarantee for 30 days in our shop."

The evidence is uncontroverted that the expression "50-50 guarantee" means that all new parts furnished for replacements and repairs shall be borne equally by the seller and purchaser; and that the defendant carried out the guarantee therein ex-

pressed. So, it will be seen without challenge that this agreement, as well as the original contract, limits defendant's liability to the written guarantees, and if any oral agreements or warranties were made, they were at least waived in this subsequent written agreement.

The testimony further shows that appellee had traded for and used secondhand automobiles; that before purchasing the automobile, he knew it was a secondhand machine undergoing repairs; and that, before purchasing it, he had the opportunity of inspecting it, taking it home and trying it out. It is further shown in the evidence that at the time of the sales transaction, appellee executed the sale-order which contained the express warranty against defects in workmanship and materials, limiting appellant's warranty to make good any part which shall, within 30 days after the delivery of the automobile, be defective, on the basis of each party paying one-half of the cost of parts—a 50-50 warranty. The evidence further shows that appellee availed himself of the warranty, brought the automobile back, received the service but did not pay one-half the cost of parts. Under such circumstances, the sale of a secondhand or used article raises no implied warranty, condition or fitness for the purpose intended, where there is an express warranty which is inconsistent with or negatives an implied warranty. Joy v. National Exchange Bank, 32 Tex.Civ.App. 398, 74 S.W. 325; American Soda Fountain Co. v. Palace Drug Store, Tex.Civ.App., 245 S.W. 1032. Same is true as to engrafting oral warranties on a written contract, where the written contract is silent as to such warranties.

Under the broadest interpretation that can be given to the record, even if it be admitted that he purchased the automobile with the oral warranties alleged, still, in view of the undisputed fact that it had been run 42,000 miles when he purchased it, and within one year he put another 18,000 miles on the speedometer, with a minimum expense, according to his own pleadings, I quote: "Since said automobile was purchased, plaintiff has been compelled to expend for repairs to said automobile, as a direct result of defendant's breach of warranty aforementioned, the sum of $25.00," in a large measure, the automobile served the purpose for which it was purchased, and, evidently, was capable of serv-

ing those purposes, and was in good condition mechanically. I am convinced that the alleged inducing fraud was not sufficient to demand the exactment of damages, assuming there was a misrepresentation as to its efficiency; and clearly, there being no fraud alleged or proven, appellee's motion for rehearing should be overruled, judgment of the lower court reversed and here rendered for appellants, as per our original opinion.